JOHN RIKOWSKI, STEPHEN RIKOWSKI AND JOSEPH MARSIEFSKY, PLAINTIFFS-RESPONDENTS, v. FIDELITY AND CASUALTY COMPANY OF NEW YORK, A CORPORATION, DEFENDANT-APPELLANT.

Submitted October 30, 1936—Decided January 22, 1937.

For the plaintiffs-respondents, *Biro & Strell* (*B. Bayard Strell*) and *Frank G. Turner*.

For the defendant-appellant, *Louis G. Flachbarth* and *Francis X. Kenneally*.

The opinion of the court was delivered by

CASE, J. This is an appeal by the defendant from a judgment of the Supreme Court reversing the decision of the District Court of the Second Judicial District of the county of Essex. Defendant's named assured, Anna S. Iuliani, was driven by her chauffeur to the Bamberger store at Washington and Market streets, Newark. She told the chauffeur, inasmuch as there was no parking space at that location, that he should find a place to park the car and return for her in an hour, which would have been at six o'clock. The chauffeur drove several blocks along Washington street and met some friends whom he took aboard. While he was driving these persons to their home and was at a distance of two miles from the Bamberger store, but within the city of Newark, at the hour of about half past five, his car collided with the one in which the plaintiffs were riding. Plaintiffs sued the chauffeur and Mrs. Iuliani. The insurance company defended the action but appeared (through its attorneys) of record for Mrs. Iuliani only. The verdict was for the named assured but against the chauffeur. Execution was issued against the chauffeur and returned unsatisfied. This suit was then brought against the insurance company upon the ground that the chauffeur was an insured person under the terms of defendant's policy. Our only information concerning the policy provisions comes to us from the state of case settled by the trial court as follows:

"The policy was issued and delivered by the defendant, Fidelity & Casualty Company, to Anna S. Iuliani, insuring her automobile, and also extending protection under the policy to any other person while riding in, or legally operating the automobile 'with the permission of the assured named in the policy, or with the permission of an adult member of the named assured's household, other than a chauffeur, domestic servant, or other employe of the assured.' "

The trial judge, sitting without a jury, deduced from the facts stated above that the driver, at the time of the accident, was not in the act of going to a place for parking, or of parking, or of returning from parking and that, therefore, under the decision of the Supreme Court in *Nicholas* v. *Inde-*

*pendence Indemnity Co.,* 11 *N. J. Mis. R.* 344, the driver was without permission and was not insured by the policy. Along with the Nicholas case may be mentioned the decision of this court in *Fox* v. *Minahan,* 114 *N. J. L.* 33. Both cases arose from the same state of facts, but we think that each of them is to be distinguished from the instant case and that neither of them is controlling. In them the occasion upon which the accident happened was distinctly separate from that on which the permission for use was given. The vehicle was taken to its designated destination and deposited there according to instructions. On another day, without the owner's permission, the vehicle was taken out for an unauthorized use and met with the accident sued upon. Herein the mishap occurred during a brief interim between attendances upon the employer, the car meanwhile being in the personal custody of the chauffeur.

We have had our attention called to no statutory or contractual provision under which the driver may be said to have been "illegally operating" the automobile. *Steinrock* v. *Hartford Accident and Indemnity Co.,* 115 *N. J. L.* 180. The question, then, clearly is, and this is the line of division on the appeal, whether the driver was, within the meaning of the policy, operating with the owner's permission.

Chapter 153, *Pamph. L.* 1924, *p.* 352, as amended by chapter 194, *Pamph. L.* 1931, *p.* 490, provides:

"No policy of insurance against loss or damage resulting from accident to or injury suffered by an employe or other person and for which the person insured is liable, or against loss or damage to property caused by animals or by any vehicle drawn, propelled or operated by any motive power, and for which loss or damage the person insured is liable, shall be issued or delivered in this state by any corporation or other insurer authorized to do business in this state, unless there shall be contained within such policy a provision * * * stating that in case execution against the insured is returned unsatisfied in an action brought by the injured person, or his or her personal representative in case death results from the accident, because of such insolvency or bankruptcy, then an action may be maintained by the injured person, or his or

her personal representative, against such corporation under the terms of the policy for the amount of the judgment in the said action not exceeding the amount of the policy. * * * A policy issued in violation of this section shall, nevertheless, be held valid but be deemed to include the provisions required by this section * * *."

The statute declares a public policy (*Osborn* v. *New Amsterdam Casualty Co.*, 111 *N. J. L.* 358), that an injured person shall, within the application of the statute, receive the benefit of the insurance which covers the person who is responsible for the injuries. Such a statute is made for the benefit of persons injured or suffering damage and not solely for the benefit of the insured. *Bakker* v. *Aetna Life Insurance Co.* (*N. Y.*), 190 *N. E. Rep.* 327, 328. The command of the statute is so potent that an insurance policy which omits the statutory provision, or indeed contains terms contrary thereto, is nevertheless deemed to contain the coverage. The present suit is under that statute.

Another statute manifesting the adoption of a public policy not directly involved but looking towards the collectibility of damages wrongfully inflicted in the operation of motor vehicles is chapter 116, *Pamph. L.* 1929, which provides that in certain instances the commissioner of motor vehicles may require proof of financial responsibility either otherwise or by liability insurance, lacking which the commissioner shall "suspend or revoke the license of such person to operate a motor vehicle * * * or suspend or revoke the registration * * *," and that if a policy of insurance be furnished, the policy shall cover the named assured "and any other person using or responsible for the use of any such motor vehicle with the consent, express or implied, of such insured."

These statutory enactments not only express a public policy but reflect a very general trend of thought, in the face of which the defendant company framed the language of the policy. That is something that we are constrained to remember in constructing the contract. Not the least ˙significant fact is that the insurer wrote the policy. Plaintiffs, of course, had nothing to do with the writing of it. The driver against whom plaintiffs' judgment went and who admittedly was a

potential insured had no part therein. The named assured was a party to the contract, but the policy was in no sense her craftsmanship. It is within the field of general knowledge that the usual indemnity policy is, except where a statute intervenes, framed by the company whose product it is and that the person to whom a policy is issued accepts it in the form offered and pays for it that which is asked, else he does not get it. The named assured may accept the contract or he may reject it. But he does not write it. So the defendant company chose the phraseology in which its obligation is set forth. It could, by its contract, have narrowed its obligation, but one would expect that if, in the light of the public policy and the general public attitude outlined above, it purposed so to do, it would have phrased its contract in words more restricted than those now before us.

It is conceded, and the trial court recognized, that the driver had permission, in the first instance, to take and to use the car. He started out on the public streets of the city with both the possession and the operation of the car entrusted to him by the owner. The instructions clothed him with discretion—where he should go, the way by which he should go, the way by which he should return. The owner placed the wheel in his hands and sent him out on the highway, and before his hands had left the wheel and before the car was off the highway the accident had happened. The Supreme Court of Errors of Connecticut has held, where an automobile liability insurance policy extended indemnity to third persons driving with the assured's permission and gave right of suit against the insurer by persons injured by operation of the car, that the permittee's deviation to drive home and change his clothes did not destroy the insurer's liability for the death of the driver's guest. *Dickinson* v. *Maryland Casually Co.*, 125 *Atl. Rep.* 866. We are of the opinion that under the facts of the case and within the meaning of the policy such deviation from instructions as the evidence discloses did not serve to end the driver's permission to operate the car.

For similar findings upon related but not identical issues see *Maryland Casually Co.* v. *Ronan* (*C. C. A., Vt.*), 37 *Fed.*

*Rep.* (2d) 449; *Guzenfield* v. *Liberty Mutual Insurance Co.* (*Mass.*), 190 *N. E. Rep.* 23, and *Fried* v. *London G. and A. Co., Ltd.,* 242 *N. Y. Supp.* 60.

The judgment of the Supreme Court will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, CASE, PERSKIE, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, COLE, JJ. 12.

*For reversal*—None.