## LUCADEMO v. HARTFORD ACCIDENT & INDEMNITY CO.

### No. 8480.

Circuit Court of Appeals, Third Circuit.

Argued Feb. 10, 1944.

Decided April 5, 1944.

Joseph Coult, of Newark, N. J., for appellant.

James F. X. O'Brien, of Newark, N. J., for appellee.

Before MARIS, GOODRICH, and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This is a suit upon an automobile liability policy of insurance. The plaintiff, prior to this action had obtained a judgment for personal injuries against Hosea Johnson in a negligence suit in a New Jersey county court. Johnson was the operator of an automobile owned by Louis Vogelbaum. Plaintiff was a pedestrian. The accident occurred March 4, 1936 in Newark, New Jersey. Thereafter the plaintiff sued the present defendant, Vogelbaum's automobile liability insurance carrier, on the policy, in the United States District Court. The foundation of his claim is the contention that Johnson had Vogelbaum's permission to drive the latter's car; therefore, that Johnson was an additional assured under the omnibus clause [1] of the policy. The case went to the jury on the question of

---

[1] "Additional Assured

"A. This policy is extended to cover as an additional assured any person while operating any automobile described in the Declarations or any person, firm or corporation legally responsible for its operation, where the disclosed and actual use of the automobile is for 'Pleasure and Business' or 'Commercial' purposes as defined in Item 8, and the automobile is being so used with the permission of the named assured, or if the named assured is an individual with the permission of any member of the assured's household (over twenty-one years of age) other than a chauffeur or domestic servant."

permission. There was a verdict in favor of the plaintiff.

It is strongly argued on behalf of the appellant that the trial court erred, in denying its motions for a nonsuit and a direction of verdict, on the ground that there was not sufficient evidence of permission to make it a jury question. Errors are also alleged in the charge of the court.

Johnson was Vogelbaum's chauffeur and houseman. He lived at his employer's home. Vogelbaum, his wife and daughter, were in Texas during the period of the accident, having left for that State three or four days previously. Two of their children, Herbert, sixteen, and Edward, twelve, were home. A maid, Louella Rogers, was the only other occupant of the house. The evening of the accident she went out. Around nine o'clock, Johnson received a telephone call that his aunt was very sick. He told Herbert this and that he was taking the Ford (one of the two Vogelbaum machines, the other being a LaSalle) and going to see her. The boy answered, "Yes." Herbert had "practically gone to sleep" and Johnson said: "Just in case he didn't understand me clearly I wrote a note and told him I was taking the Ford and if she was better I would see him in the morning." While Johnson was on his way, the car collided with the plaintiff and the latter received substantial injuries.

There were two witnesses for the plaintiff, Johnson and Miss Brodsky, Vogelbaum's secretary. Johnson said he had used the Ford a few Sundays; on Tuesday nights when Vogelbaum would go bowling; and on Wednesdays when he would take the children to school. The bus route nearest to the Vogelbaum residence was about three quarters of a mile distant. The keys of the Ford were kept in it. Johnson stated that before Vogelbaum went away "* * * he told me to use the Ford only, * * *". "Don't use the LaSalle unless it is necessary." Referring to the use of the car for his own purposes, he said, "If he (Vogelbaum) wasn't around I always asked him if it was alright later and he told me yes it was," "* * * he didn't never object. * * *" This happened a number of times during the four or five months of Johnson's employment prior to the date of the accident. On the question of Vogelbaum's instructions to Johnson, before the former went to Texas, the court asked Johnson: ·

"When Mr. Vogelbaum told you that you might use the Ford car, what instructions, if any, did he give you with reference to the use of that car?"

"He didn't tell me anything special, only to do all the errands with the Ford and to use the Ford and don't use the LaSalle unless it was necessary."

Miss Brodsky, Vogelbaum's secretary, testified:

"(Page 59) Q. Did he specifically say what use Hosea Johnson was to make of the car or did he just say he had permission to use the car? A. He left no specific instructions as to what uses for what uses the chauffeur was to use the car but he left instructions that the chauffeur was to use the Ford car."

The maid and Vogelbaum were witnesses for the defense. Vogelbaum denied that Johnson had permission to use the car for his own purposes. A rebuttal witness for the plaintiff said that Vogelbaum told him that he had given Johnson permission to use the car on his own business when not needed by the family as chauffeur. Further, that his son had Vogelbaum's authority to let the chauffeur drive the car on his own business.

■ Under the evidence, both at the close of the testimony for the plaintiff and at the end of the entire case, the problem of permission was for the jury. Serious questions of credibility strongly developed, arose throughout the trial; but these had to do with the weight of the evidence and again were for the triers of the fact.

■ New Jersey law governs the issue and is in accord with the above conclusion. The leading New Jersey decisions are Penza v. Century Indemnity, Err. & App., 1938, 119 N.J.L. 446, 197 A. 29, and Rikowski v. Fidelity & Casualty Co. of New York, Sup., 1936, 116 N.J.L. 503, 185 A. 473, affirmed Err. & App., 1937, 117 N.J.L. 407, 189 A. 102. The above quoted type of omnibus clause was involved in both. In the Penza matter the court said at page 30 of 197 A.:

"Permission to take and use a car upon a particular occasion within the meaning and effect of the 'omnibus' clause may in a proper case be implied by usage and common practice of the parties. Maryland Casualty Co. v. Ronan, 2 Cir., 37 F.2d 449, 72 A.L.R. 1360."

156

As to the particular facts, the court commented at page 30 of 197 A.:

"There is no evidence of any such usage or practice here. It is all to the contrary. Hubert had never taken the car out without his employer's specific permission, nor had he ever before used the car for his own purposes."

The court specifically noted that its finding was not in conflict with Rikowski v. Fidelity & Casualty Co. of New York, supra. In the Supreme Court opinion in the latter case, Justice Bodine at page 473 of 185 A. said of the omnibus clause:

"The policy is intended to include within its terms, not only the owner of the car, but the persons driving with permission. There are no words limiting the insurance to instances where the permitted driver was driving upon the car owner's business. The broad general words would be meaningless, if it were necessary to determine in every case whether the driver, with the assured's permission, was proceeding within the scope of the owner's business. The policy was clearly intended to cover the owner of the vehicle and also the operator with the requisite permission. Such driver, as much as the owner, is assured against loss, and the party injured may have the benefit of the insurance."

The facts there were that the insured's chauffeur was in an accident while driving friends of his to their home after having been instructed by the insured to find a parking place and return in an hour. The court held him to have been operating the automobile with the insured's permission at the time of the collision within the automobile liability policy, so as to justify recovery from the insured by parties injured after judgment was obtained by them against the chauffeur and execution returned unsatisfied.

The Court of Errors and Appeals in affirming the lower court, said at page 104 of 189 A.:

"We are of the opinion that under the facts of the case and within the meaning of the policy such deviation from instructions as the evidence discloses did not serve to end the driver's permission to operate the car."

■ In the present situation the evidence of the permission is far more direct. It is contradicted and its believableness attacked, but those things were for the jury who resolved them in favor of the plaintiff.

The first objection to the trial judge's charge reads:

"The trial court erred in charging the jury that the minor son of the named assured could have extended permission to use the assured's car to Johnson so as to make the latter an additional insured under the omnibus clause."

This has to do with the omnibus clause quoted in the footnote supra. The last part of that clause is concerned with permission, by someone other than the named assured, to operate the automobile and reads:

"* * * or if the named assured is an individual with the permission of any member of the assured's household (over twenty-one years of age) other than a chauffeur or domestic servant."

What the court actually said was:

"Now, the third possibility which the plaintiff claims to present, more by way of argument and in some requests to charge which I shall read to you, that the son, Herbert I think his name was, extended this permission to Johnson to use the car. Well, that may be, that's a possibility as a matter of law, but assume for the purpose of this instruction only that Herbert did exactly that, that he did authorize Johnson to take the car. That could not bind this insurance carrier, that could not bind this defendant under this policy unless you also find that Vogelbaum, the father, authorized his son as his agent to grant such permission. In other words it isn't sufficient that this boy of fifteen granted permission to Johnson to use the car, you must find the additional factor that he did so as the agent of his father and with the express or implied authority of his father because this youngster had no right to act without such authority and could not act so as to bind the insurance carrier, without the express or implied authority of his father."

■ Plainly the court meant that the boy Herbert could not give such permission himself but could act as a channel or messenger to convey his father's instructions or wishes; in other words, the father speaking through his son. There was evidence in the case, to this effect, from Cavanaugh, the person who had talked with Vogelbaum, though this was at best of questionable value except as to the credibility of Vogelbaum. There, too, might be

some such slight inference from other evidence in the case. In any event, at worst, it was not prejudicial error and the court immediately following the above, said:

"I instruct you now, as I have instructed you heretofore, that your verdict must be predicated upon the testimony of the witnesses, the testimony of the witness uninfluenced by the comment of counsel. Now that instruction, as brief as it is, is particularly important here because both counsel in their closing argument have indulged somewhat freely in what I would term speculation, 'because this wasn't here this must have been,' or, 'because that wasn't here the other must have been.' Now, it is perfectly fair argument to a jury, I don't condemn counsel, it is fair argument, but I warn you against it so that you may not run into the error of predicating any verdict upon it because your verdict must be supported only by the testimony of the witnesses as you recall it, uninfluenced by the comment of counsel. That is equally true of any comment I make; your verdict must be predicated upon the testimony uninfluenced by any comments I have made."

We have carefully examined the other objections to the court's charge. While they are ably presented, we do not see that they have such merit as warrants further discussion here.

The judgment of the District Court is affirmed.