## CENTURY INDEMNITY CO. v. SIMON et al.

### Civil Action No. 5195.

### District Court, D. New Jersey.

### May 3, 1948.

James L. Handford, of Newark, N.J., for plaintiff.

David Wilentz, of Perth Amboy, N.J., for defendant Simon.

Edward Sachar, of Plainfield, N.J., for defendant Minicozzi.

SMITH, District Judge.

This is a civil action under Section 274d of the Judicial Code as amended, 28 U.S.C.A. § 400, the Declaratory Judgment Act. The plaintiff, an insurer, seeks a judgment declaratory of the rights and liabilities of the respective parties under a policy of insurance issued to one of the defendants, its insured, and an endorsement thereto issued to another. The jurisdiction of the Court is founded upon diversity of citizenship.

### Facts.

I. The plaintiff Century Indemnity Company (hereinafter identified as Century) issued to the defendant Jack Simon (hereinafter identified as Simon) a motor vehicle liability policy, No. A 771529, which covered the automobiles therein described. The policy was issued on March 13, 1944, and expired on March 13, 1945.

II. The policy was the standard liability policy in which the insurer agreed, among other things, to indemnify the insured for any sums which the latter might be required to pay to others for personal injury or property damage "caused by accident and arising out of the ownership, maintenance or use" of the automobiles described therein. The coverage thereunder extended to the "insured" as therein defined, which included "any person while using the automobile * * *, provided the actual use of the automobile (was) with the permission of the named insured." The express provisions of the policy limited the "bodily injury liability" to $5000 for each person and $10,000 for each accident.

III. Simon accepted the policy as tendered, and thereby adopted as his own the declarations therein contained, among which was the following declaration of owner-

ship: "Except with respect to bailment lease, conditional sale, mortgage or other encumbrance the Named Insured is the sole owner of the automobile, except as herein stated: No exceptions."

IV. The policy contained, in addition to others, the following condition: "Such insurance as is afforded by this policy for bodily injury liability or property damage liability shall comply with the provisions of the motor vehicle financial responsibility law of any state or province which shall be applicable with respect to any such liability arising out of the ownership, maintenance or use of the automobile during the policy period, to the extent of the coverage and limits of liability required by such law, but in no event in excess of the limits of liability stated in this policy. The insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph." This condition is limited to the coverage therein noted, to wit, such liability as may be imposed by "the motor vehicle financial responsibility law of any state."

V. The defendant Frank Russo (hereinafter identified as Russo) was employed by Simon as a route salesman on August 6, 1944, and was so employed until November 1, 1944. Russo was required by the express provision of a written agreement, dated August 8, 1944, to furnish Simon with a bond to indemnify the latter "for any loss or losses sustained on" the route assigned to the former. This agreement, and particularly the said provision, is relevant and material here only because of the dispute between the said defendants as to the ownership of the automobile covered by the endorsement attached to the policy.

VI. Russo, having been previously convicted of violations of the Motor Vehicle Law, and having had his driver's license revoked therefor, was subject to the Motor Vehicle Financial Responsibility Law as amended, R.S. 39:6-1 et seq., N.J.S.A. 39:-6-1 et seq., which required proof of financial responsibility as a condition precedent to his right to hold a driver's license. Simon, cognizant of this fact, requested Cen-

tury to extend the coverage of the policy to Russo and furnish proof thereof to the commissioner of motor vehicles.

VII. Century, after investigation, and with full knowledge that Russo was a person subject to the Motor Vehicle Financial Responsibility Law as amended, extended the coverage of the policy to him, and as evidence thereof issued an endorsement (P–3), in lieu of a policy, "attached to and forming a part of" the policy. The policy, supplemented by the endorsement, was "non-cancelable except after ten days' written notice to the commissioner" of motor vehicles, as required by the said Law, R.S. 39:-6–11, N.J.S.A. 39:6–11. Pursuant to the provisions of the said Law, Century filed with the commissioner of motor vehicles an "owner's policy certificate" as evidence of Russo's financial responsibility. The coverage of Russo was limited to the automobiles described in the policy and owned by Simon.

VIII. The pertinent provisions of the endorsement follow:

"In consideration of an additional premium of * * * $1.00 it is hereby understood and agreed that the Company has filed a certificate to comply with the Financial Responsibility Laws of the State of ...... New Jersey, in behalf of ...... Frank Russo ......

"Additional Premium
"B. I. ...... .60
"P. D. ...... .40

"It is further understood and agreed that the certificate is required as the result of ...... Speeding ...... occurring ...... October 1942—Clark Township ......

"Cancellation of this Policy shall not become effective until ...... Ten (10) ...... days after receipt of written notice of such cancellation by ...... Commissioner of Motor Vehicles ...... of the State of .... New Jersey ......

"Attached to and forming part of Policy No. ....:. A 771529 ...... issued to ...... Jack Simon tr/as Simons Pure Milk Co. ...... issued by ...... The Century Indemnity Company ...... and is effective from ...... August 24th, 1944. ...... "

IX. The provisions of the Motor Vehicle Financial Responsibility Law having been complied with, the commissioner of motor vehicles authorized Russo to obtain a "conditional auto driver's license." This license was obtained by the said defendant. The driving privileges thereunder were limited to automobiles owned by Simon.

X. Thereafter, on September 7, 1944, Russo purchased a Chevrolet sedan from the Public Motor Sales. Pursuant to a previous understanding, title to this vehicle, subject to a conditional sales agreement with the Mutual Discount Company, was taken in the name of Simon. The initial deposit on the purchase price was made by Russo, but thereafter, until January of 1945, monthly payments were made by Simon. These payments, however, were either advanced by Russo or deducted from his earnings. The balance of the purchase price, which was not paid until some time after December 11, 1944, was paid by Simon, who then sold the vehicle and retained the proceeds of the sale.

XI. At the request of Simon, the Company issued an endorsement, attached to and forming a part of the policy, which extended the coverage of the policy to the sedan. This endorsement became effective on September 9, 1944, and by the terms of the policy expired on Mar. 13, 1945. The additional premium was paid by Simon but from funds deducted from Russo's earnings.

XII. It seems reasonably clear that Simon held nothing more than legal title to the sedan, subject, however, to the conditional sales agreement. Simon was not "the sole owner" of this vehicle within the meaning of the declaration embodied in the policy, although he may have had an interest therein by reason of his agreement with Russo. This fact, however, will not invalidate the policy.

XIII. The sedan was purchased by Russo for his own personal use. After its purchase he had the exclusive use and possession of it until November 1, 1944, when he left the employ of Simon, and thereafter until some time after the accident of December 11, 1944, when Simon took possession of it. This use and possession of the vehicle was with the full knowledge and permission of Simon. The permission was not limited to a particular use and was not

revoked upon the termination of Russo's employment.

XIV. On December 11, 1944, the sedan, while being driven by Russo, struck and injured the defendant Joseph Minicozzi (hereinafter identified as Minicozzi), who thereafter instituted an action for damages in the New Jersey Supreme Court against Russo and Simon. A judgment against Russo in the amount of $20,000 has been entered in the said action. The action against Simon is still pending.

XV. Simon testified that on November 1, 1944, when Russo left his employ, he instructed him not to use the car. This testimony follows:

"Q. Did he take the car with him when he quit that day? A. No, he didn't, I told him not to.

"Q. Did he come back? A. Yes, he came back later.

"Q. The same day? A. That's right.

"Q. What did he say he wanted the car for? A. He came back and told me that the car was in bad shape, which I had known, and he said that as long as he isn't going to be working now he will have plenty of time to fix it up so that if I sold it I would get a bigger price. Well, I thought that would be a pretty good idea so I gave him the keys. I had the keys in my possession at the time and I gave him the keys and told him that under no condition can he use the car, all he can do is fix it and to keep it at his home.

"Q. And not use it for anything? A. No, nothing."

XVI. We are inclined to doubt this testimony because it seems inconsistent with the facts. Russo, although not in the employ of Simon, remained in possession of the sedan and continued to use it for more than a month before the accident. Simon knew that Russo was in possession of the sedan, and, in fact, accepted from Russo two monthly payments on the purchase price, which he forwarded to the Mutual Discount Company. Simon made no effort to gain possession of the sedan until after the accident, and then only to reimburse himself for his losses. It is our opinion, and we find as a fact, that Russo was driving the sedan with Simon's permission at the time of the accident.

XVII. After the accident Century issued an endorsement cancelling the coverage on the sedan and tendered to Simon a return of the premium. This attempted cancellation was ineffective because under the express provisions of the Motor Vehicle Financial Responsibility Law the liability of Century had then become absolute and the policy was not cancelable.

### Discussion.

 It is presumed that Simon accepted the policy with full knowledge of its contents and adopted as his own the declarations therein contained, among which was the declaration of ownership. This declaration was a warranty of ownership, the breach of which constituted a breach of contract sufficient to defeat the rights of the insured under the policy. Ambrose v. Indemnity Ins. Co. of North America, 124 N.J.L. 438, 12 A.2d 693; Hudson Casualty Ins. Co. v. Garfinkel, 111 N.J.Eq. 70, 161 A. 195. This defense, which is ordinarily valid against the insured and those in privity with him, may not be interposed against Minicozzi in the present suit.

 Century issued to Russo, at the request of Simon, an endorsement which extended the coverage of the policy to him. This endorsement was issued in lieu of a new policy pursuant to the express provisions of the Motor Vehicle Financial Responsibility Law as amended, R.S. 39:6-1 et seq., N.J.S.A. 39:6-1 et seq. The policy must be construed as one issued pursuant to the said Law and therefore governed by its provisions. Any other construction would violate the statutory mandate that "any policy of motor vehicle liability insurance furnished as proof of financial responsibility pursuant to section 39:6-11 of this chapter, either by the filing of a certificate signed by a duly licensed agent of the company issuing the policy * * *, or otherwise, shall be deemed amended to conform with and to contain all the provisions required by this chapter, any provision of the policy or certificate to the contrary notwithstanding." N.J.S.A. 39:6-20.

The statute expressly provides that a policy issued pursuant thereto "shall be non-cancelable except after ten days' written notice to the commissioner" of motor vehicles. The statute further provides that such a policy shall be subject to the following provision: "The liability of a company under a motor vehicle liability policy shall become absolute when loss or damage covered by the policy occurs." The former provision is embodied in both the endorsement issued to Russo and in the certificate filed with the commissioner of motor vehicles; the latter provision is made a part of the policy by the express mandate of the statute.

It seems reasonably clear that an insurer, having issued a policy pursuant to and in accordance with the Motor Vehicle Financial Responsibility Law, may not effectively cancel such a policy or avoid liability thereunder after an accident has occurred and a cause of action therefor has accrued. The liability of the insurer becomes absolute "when loss or damage covered by the policy occurs." R.S. 39:6–20, N.J.S.A. 39:6–20. The courts of this state have so held. Ambrose v. Indemnity Ins. Co. of North America, 120 N.J.L. 248, 199 A. 47; Woloshin v. Century Indemnity Co., 116 N.J.L. 577, 186 A. 44; Steliga v. Metropolitan Casualty Ins. Co., 113 N.J.L. 101, 172 A. 793, affirmed 114 N.J.L. 156, 176 A. 331; United States Casualty Co. v. Timmerman, 118 N.J.Eq. 563, 180 A. 629; see also Behaney v. Travelers Insurance Co., 3 Cir., 121 F.2d 838. The defense of breach of warranty, otherwise available to the insurer in a suit on the policy, is not available where, as here, the policy is governed by the said law. Ibid.

The Motor Vehicle Financial Responsibility Law was discussed by Vice Chancellor Bigelow in the case of United States Casualty Co. v. Timmerman, supra. It was therein stated, at page 632 of 180 A.: "Its purpose is to forbid the use of the roads to certain persons, unless they are able to respond in damages in case they cause injury to others. The beneficiaries of the statute and of the policy provisions required thereby, are the public—those who may be injured in motor accidents. The protec-

tion afforded by the policy to the assured is outside the purpose of the statute, as clearly appears from the clause giving to the company a right of action against assured in certain cases. Now a policy which is void ab initio because of a warranty or condition precedent provides no protection to the public. Such conditions must fail."

The rights of the beneficiary under the ordinary liability policy are derivative and secondary and are, therefore, no greater than those of the named insured. Ambrose v. Indemnity Ins. Co. of North America, 124 N.J.L. 438, 12 A.2d 693; Kindervater v. Motorists Casualty Ins. Co., 120 N.J.L. 373, 199 A. 606; Neilson v. American Mutual Liability Ins. Co., 111 N.J.L. 345, 168 A. 436. This is not true, however, of the rights of the beneficiary under the liability policy issued pursuant to the Motor Vehicle Financial Responsibility Law. The rights of the beneficiary under such a policy are original and primary, and only he may invoke the Law to defeat the insurer's disclaimer of liability. Ambrose v. Indemnity Ins. Co. of North America, 120 N.J.L. 248, 199 A. 47, and the other cases herein cited. The policy may not be regarded as void ab initio as to him, although it may be void ab initio as between the insurer and the insured. Ibid.

Century seeks to avoid liability on a further ground, to wit, that Russo was using the sedan without the permission of Simon, "the named insured," at the time of the accident. It is our opinion that the evidence is clearly to the contrary. The sedan was purchased by Russo for his own personal use, and Simon, who must be regarded as the lawful owner for the purposes of this suit, permitted Russo to use the sedan for his own business and pleasure for several months. This permission was not revoked upon the termination of Russo's employment but was in fact continued. The evidence before the Court is susceptible of no other inference. Even if express permission were lacking, permission may be implied by usuage and common practice. Penza v. Century Indemnity Co., 119 N.J.L. 446, 197 A. 29; Lucademo v. Hartford Accident & Indemnity Co. 3 Cir., 142 F.2d 154.

It is our opinion, however, that the liability of Century is clearly independent of the "omnibus" clause of the policy; its liability is established by the express provisions of the Motor Vehicle Financial Responsibility Law and the endorsement issued to Russo pursuant thereto. This endorsement, issued in lieu of a policy, extended the coverage of the policy to Russo as a named insured; he qualified as a named insured within the meaning of the policy while driving automobiles owned by Simon. R.S. 39:6–20, N.J.S.A. 39:6–20. The liability of Century was, therefore, independent of the conditions of the "omnibus" clause.

It is true that Simon was not "the sole owner" of the sedan, but this fact will not defeat the rights of Minicozzi under the policy. His rights, as we have heretofore stated, are original and primary, and Century is therefore estopped to deny liability on this ground. The liability of Century became absolute when the accident occurred and the cause of action therefor accrued. R.S. 39:6–20, N.J.S.A. 39:6–20, and the cases herein cited. Any other construction would be inconsistent with the Motor Vehicle Financial Responsibility Law and would defeat its very purpose—the protection of the public.

It necessarily follows that Century would not be liable under the policy except for the express provisions of the Motor Vehicle Financial Responsibility Law as interpreted by the courts of this state. Therefore the fourth condition of the policy, quoted in paragraph IV of the facts, may be invoked by Century against Russo as the named insured, R.S. 39:6–20, N.J.S.A. 39:-6–20. Russo is obligated thereunder to reimburse Century for any payment made by it and which "it would not have been obligated to make under the terms of this policy except for" the said condition.

### Conclusions of Law.

I. The declaration of ownership embodied in the policy of insurance was a warranty. The breach of warranty although available to Century as a defense against the insured, did not invalidate the policy of insurance as between Century and Minicozzi. The rights of Minicozzi under the policy of insurance were original and primary, and as to him the liability of Century was absolute when the accident occurred and the cause of action therefor accrued.

II. Minicozzi is entitled to judgment against Century in the amount of $5,000, the limit of liability fixed by the policy. Judgment in favor of the said defendant and against the plaintiff in the said amount will, therefore, be entered.

III. Russo is obligated under the policy to reimburse Century for any payment made by it on account of the said judgment. A judgment in favor of the plaintiff and against the said defendant may be entered upon payment by the plaintiff of the judgment entered in favor of the defendant Minicozzi.