59 N.J. Super. 373 (1960)
157 A.2d 853
JOHN MATITS, PLAINTIFF-RESPONDENT,
v.
NATIONWIDE MUTUAL INSURANCE CO., ETC., DEFENDANT-APPELLANT. ELIZABETH SLODZINSKI AND ANTHONY SLODZINSKI, PLAINTIFFS-RESPONDENTS,
v.
NATIONWIDE MUTUAL INSURANCE CO., ETC., DEFENDANT-APPELLANT, AND ALLSTATE INSURANCE COMPANY, ETC., DEFENDANT. ALLSTATE INSURANCE COMPANY, PLAINTIFF-RESPONDENT,
v.
NATIONWIDE MUTUAL INSURANCE CO., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 1, 1959.
Decided February 2, 1960.
*375 Before Judges GAULKIN, SULLIVAN and FOLEY.
Mr. Henry H. Rubenson argued the cause for defendant-appellant (Messrs. Oppenheim & Oppenheim, attorneys).
Mr. Leon A. Consales argued the cause for plaintiffs-respondents (Messrs. Gelman & Gelman, attorneys for John Matits; Mr. Leon A. Consales, attorney for Elizabeth and Anthony Slodzinski).
Mr. Kent A. Losche argued the cause for Allstate Insurance Company (Mr. Charles C. Shenier, attorney).
The opinion of the court was delivered by FOLEY, J.A.D.
Defendant Nationwide Mutual Insurance Co. (hereinafter referred to as Nationwide) appeals from judgments entered against it in favor of all plaintiffs. The case was tried in the Law Division without a jury.
On October 26, 1956 one Betty Mae Hoerner was the driver of an automobile which was in collision with an automobile owned by Elizabeth Slodzinski and operated by Anthony Slodzinski in which John Matits was a passenger. The automobile driven by Mrs. Hoerner was owned by Mrs. Hilda Velasco and was insured by the defendant, Nationwide, under a standard form automobile liability policy containing the omnibus coverage required by N.J.S.A. 39:6-46(a). Mrs. Hoerner was an "additional assured" under a similar policy issued on another automobile by Allstate Insurance Company (hereinafter referred to as Allstate), the provisions of which granted her coverage for the occasional operation of a vehicle other than the one insured.
*376 Individual suits were instituted by Matits and the Slodzinskis against Mrs. Hoerner and Hilda Velasco and were consolidated for trial. Prior thereto, by stipulation, the actions against Mrs. Velasco were dismissed, it being agreed that Mrs. Hoerner was not her agent at the time of the accident. Trial of the consolidated cases resulted in judgments against Mrs. Hoerner in favor of Matits in the sum of $25,000 and in favor of Elizabeth and Anthony Slodzinski in the sums of $855 and $500 respectively. Thereafter Allstate paid $10,000, its full coverage, on account of the Matits' judgment. Matits then instituted this suit against Nationwide on the omnibus coverage for the balance. The Slodzinskis brought an action against Nationwide on the same coverage. Allstate sued Nationwide for the cost of the legal fees it had incurred in defending Mrs. Hoerner. All actions were consolidated for trial. It is conceded that in this situation Nationwide was the primary insuror, the coverage provided by Allstate being regarded as excess. See American Sur. Co. of New York v. American Indem. Co., 8 N.J. Super. 343 (App. Div. 1950). Judgments were entered against Nationwide in favor of all other parties.
The crux of the questions presented to the trial court was whether the plaintiffs had established by a preponderance of the evidence that Mrs. Hoerner at the time of the accident had such permission to drive the Velasco car as to entitle her to the benefits of the omnibus coverage embraced by the Nationwide policy. The clause provides:

"Insuring Agreements

* * * * * * * *
C. To pay all sums which those entitled to protection become legally obligated to pay as damages arising out of the ownership, maintenance or use, including loading and unloading, of the described automobile because of:
(1) destruction or damage of property including loss of use thereof;
(2) bodily injury, sickness, disease or death of any person except for liability under any workmen's compensation law. Those entitled to protection under these Coverages C (1) and C (2) are the Policyholder, his spouse if a resident of his household, and any person *377 or organization legally responsible for the use of the described automobile, provided the actual use was with the permission of the Policyholder or such spouse."
The undisputed facts bearing upon this question were these: Mrs. Hoerner and Mr and Mrs. Velasco were friends and neighbors living in Ramsey, N.J. On the evening of October 25, 1956 Velasco loaned the automobile to Mrs. Hoerner at her request so that she might visit her sick mother in Hawthorne, N.J. Mrs. Hoerner drove to Hawthorne arriving at about 8:00 P.M. She stayed for a short time and then drove to the Crane House, a tavern and restaurant at First and Madison Streets, Paterson, N.J., in search of her sister. At Hawthorne, Paterson is in the opposite direction from Ramsey. Mrs. Hoerner had at least two or three scotch highballs there and then drove to the Flamingo bar in Paterson. After a brief stay she returned to the Crane House. Shortly thereafter she paid a second visit to the Flamingo; then a third call to the Crane House. Just before midnight she made her final departure from the latter establishment and within a short time was involved in the collision with the Slodzinski car at 10th and Madison Streets, Paterson.
Matters other than these were in controversy. Velasco testified that when he gave permission to use the car he directed Mrs. Hoerner to return it within one hour as he was on "standby"; contrarily Mrs. Hoerner said that no strings were attached to the permission. Again she testified that at about 11:00 P.M. she telephoned Velasco that she was "going to be a little late" and asked "if he would mind" if she "kept the car a little longer"; to which he replied: "Certainly as long as [she] returned the car before three o'clock in the morning." But his version of the conversation was that it occurred between 9:00 P.M. and 9:30 P.M. and he said that, upon being informed by Mrs. Hoerner that she contemplated stopping for a drink on the way home, that he hold her that she "better get right home" because he needed the car and her husband would be home soon and *378 if he knew that she was drinking she would "get it." The trial judge in his oral deliverance deemed it unnecessary to resolve these issues, apparently because regardless of how they were resolved his determination would not have been affected.
The rationale of the trial court's decision was that, in light of the undisputed facts above noted, Mrs. Hoerner's use of the car did not so exceed the owner's permission as to deprive her of coverage. The court relied principally upon Rikowski v. Fidelity & Casualty Co., 117 N.J.L. 407 (E. & A. 1937).
In the Rikowski case a chauffeur delivered his employer to a temporary destination where there was no parking space and was instructed by her to "find a place to park the car and return in an hour." He drove several blocks, met friends and proceeded to drive the group to their home; while thus engaged and when the hour was about half spent he met with a collision wherein the plaintiffs were injured. Plaintiffs sued the chauffeur, obtained a judgment which was unsatisfied, and then brought action against the insurance company under the omnibus coverage provided by the employer's policy. In affirming the resulting judgment against the defendant the court held:
"It is conceded, and the trial court recognized, that the driver had permission, in the first instance, to take and to use the car. He started out on the public streets of the city with both the possession and the operation of the car entrusted to him by the owner. The instructions clothed him with discretion  where he should go, the way by which he should go, the way by which he should return. The owner placed the wheel in his hands and sent him out on the highway, and before his hands had left the wheel and before the car was off the highway the accident had happened. * * * We are of the opinion that under the facts of the case and within the meaning of the policy such deviation from instructions as the evidence discloses did not serve to end the driver's permission to operate the car." Id., 117 N.J.L., at page 411.
In so holding, the court relied on Dickinson v. Maryland Cas. Co., 101 Conn. 369, 125 A. 866, 41 A.L.R. 500 (Sup. *379 Ct. Err. 1924), wherein recovery was permitted notwithstanding the permittee's deviation from the permitted course to drive home and change his clothing.
Appellant attacks the authority of Rikowski on two theories. First it is contended that the force of the Dickinson case was impaired by a subsequent decision of the Supreme Court of Errors of Connecticut, Mycek v. Hartford Acc. & Indem. Co., 128 Conn. 140, 20 A.2d 735 (1941), and it is urged that this claimed circumstance deprives Rikowski of authoritative support. The contention is without merit since Mycek is readily distinguishable from Dickinson in that in Mycek only a non-permitted use was involved whereas in Dickinson the question of the effect of a deviation from a permitted use was presented. The distinction between these varying situations was noted by the Connecticut court when it said:
"The omnibus clause, as applied to this case, defines an additional insured as one operating the insured automobile with the permission of the named assured. While Vargo was intrusted with the car and the keys, his use was `limited' to the business of his employers and to business hours. The case therefore presents no problem of deviation from a permitted use because the use made of the car was never, even in its inception, permitted." 20 A.2d, at page 736.
But of greater importance in considering the authority of Rikowski is that the case has recently been cited with approval by our Supreme Court in Costanzo v. Pennsylvania Threshermen, etc., Ins. Co., 30 N.J. 262 (1959) when it said:
"In 7 Appleman, Insurance Law and Practice, § 4368 (1942), the author states:
"`[W]hen permission is given for the use of the automobile, a more extended use than that expressly permitted will be covered and it is immaterial that the operator may have deviated from the intended route or use, or from the instructions of the owner.'
"Among the authorities cited in support of the above statement is Rikowski v. Fidelity & Casualty Co., supra. In that case the former Court of Errors and Appeals held that the omnibus clause in an insurance *380 liability policy extended coverage to the named insured's chauffeur, whose use of the car at the time of the accident was beyond the scope of the instructions of his employer." Id., 30 N.J., at pages 268-269.
The second front of attack on the applicability of the Rikowski holding is that in determining the boundary lines of the permission a distinction must be drawn between general (although restricted) permission given to an employee or a member of the assured's family, and permitted use by one not within these areas of relationship to the assured, who is driving the car for a single permitted purpose. On this score emphasis is laid on Costanzo v. Pennsylvania Threshermen, etc., Ins. Co., supra, at page 270 of 30 N.J., where the court said:
"In the present case while the son did not have a completely unrestricted use of the car, the car was not given to him for a single purpose as, for example, where a car owner lends a car to a friend merely to drive from one point to another."
We deem it significant that the Supreme Court did not cite in support of this proposition the Rikowski case but relied on Cronan v. Travelers Indem. Co., 126 N.J.L. 56 (E. & A. 1940). In Cronan the assured had given permission to her son to drive a group of his friends to a nearby pond where they intended to spend the afternoon canoeing. Rain began to fall and two members of the party, plaintiff's decedent and a young man, found shelter by sitting in the automobile. Presently with the son's permission the two drove off seeking a refreshment counter, the young man being at the wheel. En route they were involved in the accident which became the basis of the judgment on which action was brought against the insurance company. In denying recovery the court pointed out that the occurrence had taken place out of the presence of the permittee and when the car was not under his control and that the use was clearly beyond the confines of the single purpose for which the vehicle had been loaned. Thus, while the above quoted portions of Costanzo are apposite to the *381 cited case they have no application to the factual picture of permission as here developed by the undisputed proofs.
We note that the judicial construction of the omnibus clause as it affects the problem before us, in the many jurisdictions which have considered it, has produced widely variant philosophical concepts which have been classified generally into three categories. These classifications are:
1. "If the vehicle was originally entrusted by the named insured, or one having proper authority to give permission, to the person operating it at the time of the accident, then, despite hell or high water, such operation is considered to be within the scope of the permission granted, regardless of how grossly the terms of the original bailment may have been violated."

* * * * * * * *
2. "Where the use made of the automobile by the bailee sufficiently exceeds the scope of permission given so as to make the bailee liable to the insured in action for conversion that use is not covered. This means, fundamentally, that the vehicle must be used for a purpose reasonably within the scope of the permission granted, within the time limits imposed or contemplated by the parties, and operated within geographical limits so contemplated."

* * * * * * * *
3. "If the use made by the bailee is not a gross violation of the terms of the bailment, even though it may have amounted to a deviation, protection is still afforded such additional insured." 7 Appleman, Insurance Law and Practice, § 4366-68, at pp. 170, 172, 178 (1942).
Thus far our courts have not been confronted by a factual situation which necessarily evoked the question of whether or not they would adopt the "hell or high water" rule. However it is entirely clear that the statute making omnibus coverage mandatory has been regarded as one which declares a public policy that an injured person shall, within the application of the statute, receive the benefit of the insurance which covers the person who is responsible for the injuries and that the statute is made for the benefit of persons injured or suffering damages and not solely for the benefit of the insured. Costanzo v. Pennsylvania Threshermen, etc., Ins. Co., supra, at page 268 of 30 N.J.; Rikowski v. Fidelity & Casualty Co., supra, at page 410 of 117 N.J.L. These *382 principles are the bedrock of the concept that in the absence of a gross deviation from the permitted use the permittee will not be denied the benefit of the insurance to the detriment of the injured.
We are of the opinion that the trial court correctly concluded that Mrs. Hoerner's use of the Velasco vehicle did not so deviate from the permission granted to her as to deprive her of coverage under the policy.
Affirmed.