242 N.J. Super. 643 (1990)
577 A.2d 1303
HAROLD STIEFEL, PLAINTIFF-RESPONDENT,
v.
BAYLY, MARTIN AND FAY OF CONNECTICUT, INC., AND CITY INSURANCE COMPANY/HOME INSURANCE CO., DEFENDANTS, AND BRUNEL JOSEPH, COBB, NORTON & TOMA, INC., ELLIS COBB, NEWARK INSURANCE CO., AND MOTORLEASE CORP., DEFENDANTS-RESPONDENTS, AND PACIFIC EMPLOYERS INSURANCE CO./INSURANCE COMPANY OF NORTH AMERICA, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 7, 1990.
Decided July 18, 1990.
*644 Before Judges PETRELLA, O'BRIEN and HAVEY.
Robert H. Gardner argued the cause for appellant (DeYoe, Heissenbuttel & Mattia, attorneys; Gary R. Matano, on the brief).
James A. Mella argued the cause for respondent Harold Stiefel (Mella & Ruotolo, attorneys; James A. Mella, on the brief).
Frank M. Coscia argued the cause for respondent Newark Insurance Company (Gallo, Geffner, Fenster, Turitz & Harraka, attorneys; Frank M. Coscia, of counsel and on the brief).
Rebecca Smith McNinney argued the cause for respondent Motorlease Corp. (Donington, Leroe, Salmond, Luongo & Santoro, attorneys; Susan G. Rankin, on the brief).
Richard M. O'Meara attorney for respondents Cobb, Norton & Toma, Inc. and Ellis Cobb (Richard M. O'Meara and Susan J. Ellis, on the brief).
The opinion of the court was delivered by O'BRIEN, J.A.D.
Pacific Employers Insurance Company (PEIC) appeals from a summary judgment finding it liable under its excess blanket catastrophe liability (umbrella) policy to pay to plaintiff as an insured the portion of his claim in excess of underinsured coverage provided by the underlying policies. We reverse.
On February 11, 1986, 25 year old Harold Stiefel (plaintiff) suffered injuries in a collision with a vehicle operated by defendant Brunel Joseph (Joseph). Joseph's car was insured by *645 a liability policy with coverage for bodily injury in the minimum statutory amount of $15/30,000. As a result of his injuries, plaintiff underwent a laminectomy and fusion of his lumbar spine at L5-S1. He continues to suffer bilateral lumbosacral radiculopathy among other sequelae of the collision. He has also been diagnosed as suffering cervical radiculopathy as a result of disk pathology at the C1 level. Thus he claims the value of his damages exceeds the Joseph policy limits.
The vehicle plaintiff was driving had been leased by his employer, Eric Schuster Corporation (Schuster), from defendant Motorlease Corporation (Motorlease). The lease required Motorlease to obtain insurance for all vehicles leased to Schuster. Such a policy was obtained by Motorlease from Home Indemnity Company (Home). That policy contains a provision for uninsured motorist coverage in those states where coverage is mandatory by law. The policy provides that the company's limit of liability for this coverage shall be the minimum limits as defined by each state law. As to certain lessees, but not Schuster, the uninsured motorist coverage was increased beyond minimum limits.
Schuster obtained a business automobile policy through their broker, defendant Cobb, Norton & Toma, Inc. (Cobb), from Newark Insurance Company (Newark). This policy provides liability insurance in the amount of $500,000 and originally provided uninsured motorist coverage in the total amount of $35,000, later increased to $100,000, which admittedly covered plaintiff's accident.
After Motorlease obtained the Home policy, it also obtained an umbrella policy in the face amount of $15,000,000 from PEIC which is entitled "Excess Blanket Catastrophe Liability Policy." In that policy an insured is defined to include the named insured and "any person, organization ... to whom or to which the Named Insured is obligated by virtue of a written contract or permit to provide insurance such as is afforded by the terms of this policy." It also contains a definition of insured as, "any *646 person while using with the permission of the Named Insured any automobile ... owned by, loaned to or hired for use by or on behalf of the Named Insured." It is not disputed that this policy provided coverage for plaintiff while operating Motorlease's automobile.
The problem arises because plaintiff alleges that the magnitude of his injuries are such that the amount of recovery he anticipates will exceed the minimum liability coverage of the Joseph policy in the amount of $15,000 and the uninsured motorist coverage of $100,000[1] provided in the Newark policy issued to Schuster.[2]
*647 Plaintiff's complaint, filed on February 11, 1986, joined as defendants in addition to Joseph, Motorlease, Home, Newark and Cobb, Bayly, Martin and Fay of Connecticut, Inc., who were agents for the Home insurance policy. Answers were filed on behalf of all defendants followed by several motions. Summary judgments were granted to Bayly, Martin and Fay of Connecticut, Inc. and Home on October 25, 1988, which have not been appealed. In the same order motions for summary judgment by Newark, Cobb, Motorlease, and PEIC were denied, as well as plaintiff's motion for summary judgment against PEIC.
When the case came on for trial on April 24, 1989, the jury was excused until Monday, May 1. The trial judge decided he would hear reargument on all summary judgment motions, at the conclusion of which he ruled that the Newark policy provides primary underinsured motorist coverage to plaintiff in the amount of $100,000, less the $15,000 liability coverage of the Joseph policy, and that the PEIC policy issued to Motorlease provides excess underinsured motorist coverage for the benefit of plaintiff in excess of the primary coverage of Newark to a limit of $15,000,000. As noted, he directed that arbitration proceed, which has not occurred. Since the judge concluded that PEIC's policy provided more than sufficient underinsured motorist coverage to plaintiff, other claims for damages by plaintiff were moot as there would be no proximately caused injuries from any established breach of duty by the other defendants.[3] Although plaintiff has not cross-appealed and urges that we affirm the order under review, he requests that "should the trial court's ruling on the PEIC policy be reversed *648 that all other portions of that ruling, which were dependent upon that finding also be reversed and the case remanded for trial against all remaining defendants."
The final judgment entered on May 15, 1989 declares that the excess blanket catastrophe liability policy of PEIC provides underinsured motorist coverage to plaintiff for all damages as a result of the automobile accident in excess of $15,000 up to and including the policy limit of $15,000,000. Originally, the complaint against Newark, Motorlease, Ellis Cobb, and Cobb, Norton & Toma, and the cross-claims by PEIC against Motorlease were dismissed. By order of July 7, 1989, this was amended to provide, as noted, that PEIC's liability for excess coverage would be for those amounts in excess of the $100,000 coverage of Newark up to $15,000,000. It is from this final judgment and the amendatory order that this appeal is taken.
The insuring agreement of the umbrella excess blanket catastrophe liability policy issued by PEIC to Motorlease states that, "PEIC will indemnify the insured for ultimate net loss in excess of the retained limit hereinafter stated which the Insured shall become legally obligated to pay as damages because of" personal injury, property damage or advertising injury. With respect to any personal injury, property damage or advertising injury not within the terms of coverage of underlying insurance, but within the terms of coverage of the PEIC insurance, or if the limits of liability of the underlying insurance are exhausted because of personal injury, property damage or advertising injury during the period of the PEIC policy, PEIC has the right and duty to defend any suit and to make any investigation or settlement of any claim it deemed expedient within its limits of liability.
It is clear from this insuring agreement that the policy was intended to be third-party insurance coverage. Among the underlying insurance Motorlease agreed to carry was the $500,000 automobile liability policy with Home. The umbrella policy specifically provides that the insurance only covers the "ultimate *649 net loss in excess of the insured's retained limit" of liability as defined in the policy, part of which is the underlying insurance listed in the schedule which includes the Home policy. Thus the umbrella coverage is intended to be excess to the primary automobile policy limit of $500,000 with Home. It is immediately apparent that the umbrella policy did not provide uninsured or underinsured motorist coverage which is first party coverage.
The policy contains a list of exclusions, none of which are relevant to this inquiry. It also contains a series of conditions, one of which reads as follows:
3(e) As this policy is excess insurance, the Insured warrants that coverage under the uninsured motorist laws will be maintained during the policy period. It is agreed that the Named Insured shall promptly reimburse PEIC for any amount of ultimate net loss paid on behalf of any Insured as respects any payment made under an uninsured motorist law, or any similar law.
The presence of this clause in the PEIC policy was the basis upon which the trial judge found underinsured motorist coverage. In his letter opinion of July 5, 1989, the trial judge recognized that the PEIC policy "is clearly an excess policy as distinguished from the Newark policy which is clearly a primary policy." In that written opinion, the judge simply concluded:
The Pacific Employers Insurance Company policy issued to Motorlease Corporation provides excess underinsured motorist coverage for the benefit of Harold Stiefel, which coverage is excess to the primary coverage provided by Newark Insurance Company, Policy No. N DWM86642 to a limit of $15,000,000.00.
This was amplified by a further letter opinion of July 7, 1989, in which he referred to paragraph 3(e) of the conditions quoted above. After reciting legal principles concerning the interpretation of insurance contracts, the trial judge concluded:
The record will indicate that counsel for PEIC failed to give a reason for this language except a suggestion that if a court found coverage then this language would in effect exclude coverage. However, an exclusion must be clear and unambiguous. The court concluded that PEIC had not advanced any reasonable explanation for the language other than a meaning consistent with uninsured motorist coverage in excess of that provided by the underlying primary insurance coverage. If the PEIC policy was not intended to provide excess uninsured/underinsured motorist coverage the above language set forth in *650 paragraph 3(e) would serve no purpose because under no circumstance would PEIC have to cover an uninsured/underinsured loss.
The court concluded that an average insured, painstakingly reading the language of paragraph 3(e) could reasonably have expected that he had purchased excess uninsured/underinsured coverage. Taking into account such reasonable expectations and the principles of law referred to above, the court held that the PEIC excess policy provided excess uninsured/underinsured motorist coverage.
We disagree.
PEIC writes policies of insurance nationwide. The contractual relationship of an insured and his insurance company is governed by the public policy of the state in which the policy is written as reflected in that state's uninsured motorist statute. That statute becomes a part of every policy to which it is applicable to the same effect as if it were written in the policy itself. Where such statutes exist, their provisions become mandatory unless expressly rejected as provided by law. See 8C Appleman, Insurance Law and Practice, § 5067.35, at 36. Some states, for example Florida, Ohio and Louisiana, have construed their uninsured motorist statutes to include umbrella policies. See Chicago Insurance Company v. Dominguez, 420 So.2d 882 (Fla.App. 2 Dist. 1982), rev. den. 430 So.2d 450 (Fla. 1983).[4] Contrary to the conclusion of the trial judge, there are states in which an umbrella policy, such as the excess blanket catastrophe liability policy issued by PEIC in this case, may be construed to require the excess carrier to pay uninsured motorist claims of an insured under the policy. Thus, the obvious purpose of condition 3(e) was not to provide coverage for the insured, but rather to indemnify PEIC in the event that, by operation of law in a particular state (such as Florida before 1984, Ohio and Louisiana), it was obliged to pay uninsured motorist coverage to an insured. In that event, the named insured, here Motorlease, agreed to promptly reimburse PEIC "for any amount of ultimate net loss paid on behalf of any *651 insured." This provision was also to assure that Motorlease complied with any mandatory statutory requirements to provide uninsured motorist coverage.
The strained interpretation advocated by plaintiff and the other defendants, and adopted by the trial judge, has emasculated a condition provided in the policy for the protection of PEIC into a form of insuring agreement. Liberal rules of construction of insurance policies do not sanction such emasculation of the clear language of the policy. Unambiguous insurance contracts are enforced in accordance with the reasonable expectations of the insured. Sparks v. St. Paul Insurance Co., 100 N.J. 325, 337, 495 A.2d 406 (1985). The court should read policy provisions so as to avoid ambiguities, if the plain language of the contract permits. The court should not torture the language of the policy to create ambiguity. First State Underwriters v. Travelers Insurance Co., 803 F.2d 1308, 1311 (3rd Cir.1986) (quoting from Eastern Associated Coal Corp. v. Aetna Cas. & Sur. Co., 632 F.2d 1068, 1075 (3rd Cir.1980)). In DiOrio v. New Jersey Manufacturers Insurance Company, 79 N.J. 257, 398 A.2d 1274 (1979), the Court said, "... the insured's `reasonable expectations' are brought to bear on misleading terms and conditions of insurance contracts and genuine ambiguities are resolved against the insurer." Id. at 269, 398 A.2d 1274. The Court went on to state, "In applying this principle, an objectively reasonable interpretation of the average policyholder is accepted so far as the language of the insurance contract in question will permit." Ibid.
We do not agree with the trial judge's conclusion that an objectively reasonable interpretation of the average policyholder would lead Motorlease to believe it had excess uninsured/underinsured motorist coverage under the wording of the "conditions" portion of this umbrella policy. As noted by PEIC, Motorlease obtained increased limits of uninsured motorist coverage for certain of its lessees (not Schuster). If Motorlease believed that its umbrella policy provided such excess *652 coverage, why would it pay a premium to increase the coverage for certain of its lessees?
A Florida court was confronted with a somewhat similar problem in Continental Ins. Co. v. Howe, 488 So.2d 917 (Fla. App. 3 Dist. 1986). Although the accident in that case occurred in Florida, the case was decided by application of Rhode Island law. The trial court had ruled that both the primary policy and the umbrella policy issued by Continental Insurance Company provided uninsured motorist coverage. In that particular case, Continental's policy stated that it did not provide uninsured motorist coverage. However, the insureds had not rejected the coverage in writing. The trial court found that, because Continental had not complied with Rhode Island law, which requires uninsured motorist coverage to be rejected in writing, Continental was required to provide uninsured motorist coverage to the limits of its liability coverage, i.e., $2,000,000. In reversing the lower court, the Third District Court of Appeal of Florida concluded that umbrella policies do not include uninsured motorist coverage by operation of law, even though a state may require it in primary liability policies. It noted that Alabama, Illinois and New York, and a federal court construing Delaware law, had reached the same conclusion, stating:
The rationale for opting umbrella policies out of uninsured motorist coverage is that the statute is intended to protect injured motorists by insuring that they will be able to recover an amount equivalent to what would have been available if they had been injured by a driver who maintained the minimum statutory coverage. The injured motorist is already protected by, and will be able to recover the minimum statutory limits from, the primary policy. An umbrella policy is supplementary insurance. Public policy is not furthered by requiring an umbrella policy insurer to provide uninsured motorist coverage. O'Hanlon v. Hartford Accident & Indemnity Co., 639 F.2d 1019, 1026-1027 (3d Cir.1981); Matarasso v. Continental Casualty Co., 82 A.D.2d 861, 440 N.Y.S.2d 40 (1981), aff'd 56 N.Y.2d 264, 451 N.Y.S.2d 703, 436 N.E.2d 1305 (1982).[3] [488 So. 2d at 919]
The court appended a highly relevant footnote to the foregoing language where it said in footnote 3:
The view that an umbrella policy should not be interpreted to provide uninsured motorist coverage is supported by Appleman, who asserts that states which adhere to the converse view are misunderstanding the nature of umbrella *653 coverage. 8C J.A. Appleman & J. Appleman, Insurance Law and Practice, § 5071.65 (1981) [hereinafter Appleman]. An umbrella policy is fundamentally different from a primary liability policy. Its purpose is to guard against a much less frequent catastrophic loss, and the lower premium reflects the lesser risk. [Trinity Universal Ins. Co. v.] Metzger, 360 So.2d [960] at 962 [(Ala. 1978)]; Hartbarger [v. Country Mutual Ins. Co., 107 Ill. App.3d 391, 63 Ill.Dec. 42], 437 N.E.2d [691] at 694 [(1982)]; 8C Appleman, § 5071.65. [488 So.2d at 919]
We believe those comments of the Florida court are equally applicable to this case. The decision of the trial judge here ignores the nature of umbrella coverage, which is fundamentally different from a primary liability policy. It is intended to guard against a much less frequent catastrophic loss for which a lower premium is charged because of the lesser risk. If the determination of the trial judge in this case were to be sustained, this umbrella policy carrier would be exposed to liability up to $15,000,000 for plaintiff's claim. No public policy purpose would be served since the object of uninsured/underinsured coverage is to assure the injured person a source for recovery. In this case, plaintiff has the liability policy of Joseph plus the uninsured/underinsured policy coverage of Newark to look to for recovery. While we recognize that this may be inadequate, it is not the purpose of first party insurance in the form of uninsured/underinsured insurance to insure against the amount of catastrophic losses.
Even if the reasoning of the trial judge were adopted, it is impossible to understand his further conclusion that Motorlease is not obliged to indemnify PEIC for any amount it may be required to pay to plaintiff as an insured. Certainly, the indemnification provision of this policy is manifestly clear and unambiguous. If for some reason New Jersey law required underinsured motorist coverage and either a statute provided, or a court had interpreted a statute to include umbrella policies, PEIC has clearly provided, as one of the conditions of its insuring agreement with Motorlease, that Motorlease, as the named insured, will reimburse PEIC for any amount of ultimate net loss paid on behalf of any insured. The conclusion by the trial judge that this language takes away from Motorlease as *654 the named insured some coverage which had been afforded to it suggests that such coverage was not provided in the first place. The condition only applies in the event PEIC is required to pay some insured under an uninsured motorist law, not by virtue of the insuring agreement of the policy.
We conclude that the PEIC policy does not provide any excess underinsured coverage to this plaintiff. Since this decision reverses the premise upon which the trial judge dismissed plaintiff's other claims against the other defendants, those claims are reinstated for further proceedings. However, the trial judge may direct that the arbitration be completed before those claims are addressed.
Reversed and remanded for further proceedings consistent with this opinion.
NOTES
[1] Although the third paragraph of the July 7, 1989 order under review provides that Newark Insurance Company and PEIC are to proceed to arbitration on plaintiff's claim under the terms of the primary underinsured motorist policy issued by Newark, we were told at oral argument that arbitration has not occurred. Resolution of the question of excess coverage should probably await a determination of the amount of plaintiff's recovery after arbitration since the issue may become moot if it is within the underlying policies. However, we have nonetheless decided the issue since it is now over five years since the accident and over four years since suit was instituted.
[2] In its brief Newark says that its "policy provided coverage of $500,000 in liability insurance and underinsured insurance of $100,000," notwithstanding that the policy only refers to uninsured motorist coverage and there is no provision in the "coverages" portion of the policy for underinsured motorist coverage. N.J.S.A. 39:6A-14 requires every owner or registrant of an automobile registered or principally garaged in New Jersey to maintain uninsured motorist coverage as provided in N.J.S.A. 17:28-1.1. Underinsured motorist coverage is not mandatory. It is questionable whether the same public policy principles require mandatory provision of underinsured motorist coverage. However, N.J.S.A. 17:28-1.1b requires both uninsured and underinsured motorist coverage be provided as an option by an insurer to the named insured up to certain limits. Most policies today define uninsured motorist coverage to include underinsured motorist coverage. Uninsured motorist coverage and underinsured motorist coverage are distinct. Uninsured motorist coverage only applies where the liable person has no insurance at all, whereas underinsured motorist coverage applies to those situations when:

... the sum of the limits of liability under all bodily injury and property damage liability bonds and insurance policies available to a person against whom recovery is sought for bodily injury or property damage is, at the time of the accident, less than the applicable limits for underinsured motorist coverage afforded under the motor vehicle insurance policy held by the person seeking that recovery. N.J.S.A. 17:28-1.1e(1).
[3] Plaintiff contended at trial that Newark, Motorlease, Ellis Cobb, and Cobb, Norton & Toma, breached their statutory, contractual and common law duties to advise plaintiff's employer of the availability and advisability of obtaining increased limits of uninsured/underinsured motorist coverage.
[4] However, in 1984, the Florida Legislature amended the statute to provide that umbrella policies are not included. 1984 Fla. Laws, ch. 84-41, § 1.