696 A.2d 1

SUSAN MARTUSUS, ADMINISTRATRIX AD PROSEQUENDUM, AND SUSAN AND ERNEST MARTUSUS, CO-ADMINISTRATORS OF THE ESTATE OF DAVID E. MARTUSUS, DECEASED, PLAINTIFFS-RESPONDENTS, v. THOMAS J. TARTAMOSA, DEFENDANT-RESPONDENT, AND BARBARA L. HEIM, STEPHEN P. SERALE, RENEE C. LIBERONI, JOHN DOES I AND II (FICTITIOUS NAMES OF PERSONS MORE FULLY DESCRIBED HEREIN), JOINTLY, SEVERALLY AND/OR IN THE ALTERNATIVE, DEFENDANTS, AND GENERAL ACCIDENT INSURANCE COMPANY, DEFENDANT-APPELLANT.

RENEE C. LIBERONI, PLAINTIFF, v. THOMAS J. TARTAMOSA, DEFENDANT-RESPONDENT, AND TIMOTHY HEIM, BARBARA L. HEIM, STEPHEN SERALE, JOHN DOE I TO V, JOHN DOE PARTNERSHIPS I TO V, JOHN DOE CORPORATIONS I TO V, INDIVIDUALLY, JOINTLY, SEVERALLY AND/OR IN THE ALTERNATIVE, DEFENDANTS.

STEPHEN SERALE, PLAINTIFF, v. THOMAS J. TARTAMOSA, DEFENDANT-RESPONDENT, AND TIMOTHY HEIM, BARBARA L. HEIM, JOHN DOE I TO V, JOHN DOE PARTNERSHIPS I TO V, JOHN DOE CORPORATIONS I TO V, INDIVIDUALLY, JOINTLY, SEVERALLY AND/OR IN THE ALTERNATIVE, DEFENDANTS.

Argued April 29, 1997—Decided July 9, 1997.

*Joseph A. Venuti, Jr.,* argued the cause for appellant (*Swartz, Campbell & Detweiler,* attorneys).

*G. Wesley Manuel, Jr.,* argued the cause for respondents Susan Martusus, Administratrix ad Prosequendum, and Susan and Ernest Martusus, Co–Administrators of the Estate of David E. Martusus, Deceased (*Montano, Summers, Mullen, Manuel, Owens & Gregorio,* attorneys).

*Elizabeth A. Dalberth* submitted a letter in lieu of a brief on behalf of respondent Thomas J. Tartamosa (*Murphy and O'Connor,* attorneys).

The opinion of the Court was delivered by

COLEMAN, J.

The focus of this appeal is on the scope of permission to use an automobile. The narrow issue is whether the initial permission rule, first enunciated in *Matits v. Nationwide Mutual Insurance Co.*, 33 *N.J.* 488, 166 *A.*2d 345 (1960), should be applied to excess catastrophe ("umbrella") policies. The trial court held that the *Matits* rule should not apply. The Appellate Division granted leave to appeal and summarily reversed by order. We granted leave to appeal, 146 *N.J.* 562, 683 *A.*2d 1159 (1996), and now affirm.

I

-A-

General Accident Insurance Co. ("GAI") issued a $300,000 single-limit-personal-automobile-liability policy to Timothy P. Heim covering a 1989 Chevrolet Caprice and a 1989 Ford Mustang. GAI also issued to Timothy P. Heim an umbrella policy with a liability limit of $1,000,000. That policy provided coverage for damages arising from a person driving a covered vehicle "with your permission." The premium for the primary policy was $380 and the premium for the umbrella policy was $114 for the same period. The Heims's son Michael was the primary driver of the Mustang that was registered in the name of Michael's mother, Barbara Heim. Michael gave permission to defendant Thomas Tartamosa to drive the Mustang at the time of an accident that spearheaded this litigation. The umbrella policy is important as an excess policy because the two automobile policies, purchased by Tartamosa and Heim, are likely to be insufficient to cover the claims against Tartamosa.

The accident occurred on May 9, 1993, while Tartamosa was driving the Heims's Mustang southbound on State Route 42. He lost control of the car and drove across a grass median and into northbound traffic, causing a collision with another car. David Martusus, Tartamosa's sole passenger, was killed in the accident.

Three people involved in the accident filed separate complaints against Tartamosa as the driver of the Mustang and Barbara Heim as the owner. Liberty Mutual Insurance Company, the primary carrier for Tartamosa, and GAI, the Heims's primary and excess carrier, were also named as defendants. The insurance companies were joined as parties to determine coverage and priority of coverages. All of the actions were consolidated.

GAI filed a motion for summary judgment, claiming that its umbrella policy provided no coverage to Tartamosa for the accident because he had not been given permission to drive the Mustang by either Timothy or Barbara Heim, the named insured and his spouse. The trial court agreed and granted summary judgment, denying Tartamosa any coverage under GAI's umbrella policy.

-B-

A determination of whether Tartamosa was covered by the GAI umbrella policy requires us to first identify the controlling facts and the pertinent policy language. Tartamosa had been given permission to drive the vehicle by Michael, the son of Timothy and Barbara Heim. Although the vehicle was registered in Barbara's name, Michael drove and maintained it. In view of those facts, we must examine the language of the policy in light of controlling legal principles to resolve whether Michael's permission to Tartamosa to drive the Mustang was sufficient to trigger coverage.

Part 2, Paragraph 9 of the policy defines an insured as:

a. **You** or **a relative.**

b. Any person using, with **your** permission, an **auto, pleasure vehicle** or **boat you** own, rent or borrow. (**Insured** does not mean the owner of an **auto, pleasure vehicle, or boat you** rent or borrow).

Part 2, Paragraph 1 of the umbrella policy provides that "you" and "your" refer to "the Named Insured in Declarations item 1 of the Declarations and spouse who lives in the same home." The named insured on the umbrella policy is Timothy P. Heim. Part 3, Paragraph A of that policy provides that when an accident is

"covered by both a **primary insurance policy** and this policy . . . [and] an **insured** is responsible for that **harm or damage, we** will **pay the insured** for the part of the **loss** that exceeds the **primary limit.**"

GAI argues that its umbrella policy does not cover Tartamosa because its language clearly excludes him. GAI refers to the policy's definition of "insured": (1) "you" or a relative; or (2) any person using, with "your" permission, an auto that "you" own, rent, or borrow. GAI emphasizes that "your" refers only to Timothy and Barbara in the present case. GAI argues that because Tartamosa was not using the vehicle with the permission of either Timothy or Barbara, he is not covered by the policy. GAI also contends that the Appellate Division misapplied *Matits, supra,* 33 *N.J.* 488, 166 *A.*2d 345, and that case's broad definition of "permissive user" because that interpretation applies to primary coverage and not to umbrella policies.

Plaintiffs and Tartamosa argue that the Appellate Division properly applied the broad definition of "permissive user" followed in *Matits, supra,* 33 *N.J.* 488, 166 *A.*2d 345, and its progeny because this Court has consistently deemed drivers "permissive users" even when the person giving permission to the driver was not a "named insured" as required by the insurance policy.

-C-

The *Matits* Court held that once a person is given permission to use a vehicle, "any subsequent use short of theft or the like while it remains in his possession, though not within the contemplation of the parties, is a permissive use within the terms of a standard omnibus clause in an automobile liability insurance policy." *Matits, supra,* 33 *N.J.* at 496–97, 166 *A.*2d 345.

In *Matits,* the husband of a named insured allowed his neighbor to borrow his wife's vehicle to visit her mother. *Id.* at 490–91, 166 *A.*2d 345. The insurance policy covered any person using the vehicle with the "permission" of either the named insured or her husband. *Id.* at 492, 166 *A.*2d 345. After briefly visiting her

mother, the neighbor drove out of her way to a restaurant in Paterson. *Id.* at 491, 166 *A.*2d 345. After consuming a few highballs, she took several trips between that restaurant and a bar in Paterson. *Ibid.* On her way home, she was involved in an auto accident. *Ibid.* The trial court deemed the neighbor "an additional insured" under the policy. *Id.* at 492, 166 *A.*2d 345. The Appellate Division and this Court affirmed. *Id.* at 492, 497, 166 *A.*2d 345.

In adopting the initial permission rule, this Court reasoned that once a person obtains permission to drive a vehicle, the driver is an additional insured under a typical omnibus clause for the duration of the driver's use of the car. *Id.* at 496–97, 166 *A.*2d 345. That rule applies to any deviation from the initial scope of permitted use, so long as the subsequent use does not constitute theft or a similar offense. *Ibid.* The *Matits* holding promoted the public policy of " 'collectibility of damages wrongfully inflicted in the operation of motor vehicles.' " *Id.* at 495, 166 *A.*2d 345 (quoting *Rikowski v. Fidelity & Cas. Co.*, 117 *N.J.L.* 407, 410, 189 *A.* 102 (E. & A.1937)); *see also Motor Club of Am. Ins. Co. v. Phillips*, 66 *N.J.* 277, 292, 330 *A.*2d 360 (1974) (emphasizing state objective to provide for "adequate indemnification of innocent automobile accident victims"). The *Matits* Court also concluded that because liability insurance policies are drafted by insurers, they should be construed liberally in favor of insureds. *Matits, supra,* 33 *N.J.* at 495, 166 *A.*2d 345.

In *Small v. Schuncke*, 42 *N.J.* 407, 201 *A.*2d 56 (1964), this Court dealt more directly with an insured who had not given express permission to the person who was involved in the accident. In that case, the insured was hospitalized. *Id.* at 410, 201 *A.*2d 56. He asked his nephew to use the insured's car to run errands for the insured. *Ibid.* They did not discuss any other use of the car by the nephew. *Ibid.*

The nephew drove to New York with a friend. *Ibid.* While the friend was driving with the nephew's permission, he was involved in an accident. *Ibid.* The Court held that the policy covered the

accident, even though (1) the nephew did not have explicit permission to use the car for personal errands; and (2) the nephew's friend did not have the owner's express permission to drive the car. *Id.* at 415, 201 *A.*2d 56.

*Odolecki v. Hartford Accident & Indemnity Co.,* 55 *N.J.* 542, 264 *A.*2d 38 (1970), like *Small,* involved a person who received permission to drive a car from a person other than the named insured. The standard omnibus clause of the policy in that case covered "the named insured, her spouse, and 'any person while using the automobile [...] provided the actual use of the automobile is by the named insured or such spouse or with the permission of either.'" *Id.* at 544, 264 *A.*2d 38. The insured permitted her son to use her car while he was home from college during the summer but told him not to allow anyone else to drive the vehicle. *Ibid.* When the insured's son allowed the plaintiff to drive the car, the plaintiff was involved in an accident. *Ibid.*

*Odolecki* held that the plaintiff was an additional insured under the omnibus clause of the policy. *Id.* at 550, 264 *A.*2d 38. The Court reiterated the initial permission rule of *Matits, supra,* 33 *N.J.* at 495, 166 *A.*2d 345, and the policy of ensuring that innocent victims of automobile accidents have insurance coverage. *Odolecki, supra,* 55 *N.J.* at 546, 264 *A.*2d 38. The distinction between an unintended use by an otherwise-permitted user, as in *Matits,* and such use by an unpermitted user, as in *Odolecki,* was of no consequence because such a distinction would lead to unnecessary litigation to determine how far beyond the intended use a driver is permitted to use a vehicle. *Id.* at 549–50, 264 *A.*2d 38.

A more indirect illustration of "permissive" use is found in *Motor Club Fire & Casualty Co. v. New Jersey Manufacturers Insurance Co.,* 73 *N.J.* 425, 375 *A.*2d 639 (1977). In that case, the insured was driving her car, with her neighbor and her neighbor's son as passengers. *Id.* at 428–29, 375 *A.*2d 639. When the insured became lost, the neighbor's son forced the insured from behind the wheel, took control of the car, and caused an accident. *Id.* at 429, 375 *A.*2d 639. The omnibus clause in the insured's

policy limited coverage to injuries that occurred while the driver was using the vehicle within the scope of the insured's permission. *Id.* at 430, 436, 375 *A.*2d 639.

The omnibus clause was invalidated because it was inconsistent with *N.J.S.A.* 39:6–46 (repealed 1979), which controlled. *Motor Club, supra,* 73 *N.J.* at 434–36, 375 *A.*2d 639. The statute provided that auto insurance policies must cover the named insured and

> any other person using or responsible for the use of any [covered] motor vehicle with the express or implied consent of the insured, against loss from the liability imposed upon the insured or other person by law, for injury to or the death of a person ... growing out of the maintenance, use or operation of the motor vehicle.
>
> [*N.J.S.A.* 39:6–46(a) (repealed 1979).]

The Court held that the statute's reference to the insured's "express or implied consent" was clearer and broader than the policy, which required the insured's "permission." *Motor Club, supra,* 73 *N.J.* at 434, 375 *A.*2d 639. Under the initial permission rule, the insurer was required to provide coverage because the neighbor's son's initial use of the vehicle as a passenger was consensual and his actions did not constitute "theft or the like." *Id.* at 438–39, 375 *A.*2d 639. Thus, *Motor Club* is an illustration of a broad definition of "initial permission" in the context of automobile liability insurance.

In *Verriest v. INA Underwriters Insurance Co.,* 142 *N.J.* 401, 662 *A.*2d 967 (1995), the Court held that an insured's implicit grant of permission to a relative to make repairs to the insured's vehicle was sufficient to render that relative a permissive user. *Id.* at 415, 662 *A.*2d 967. The *Verriest* Court held that by giving his car keys to his relative and watching him repair the car, the insured had given his relative permission to use the car. *Id.* at 412, 662 *A.*2d 967. The Court acknowledged that the insured had not intended for his relative to drive the vehicle on a public highway, but because the use was not "theft or the like," it was permissive use under the initial permission rule. *Id.* at 414–15, 662 *A.*2d 967.

■ The controlling principle to be extracted from the foregoing cases is that we have a public policy of protecting "innocent victims" of automobile accidents by broadly interpreting both (1) which users are "permissive users," and (2) which actions of those users should be covered by the insured's policy. Absent statutory or policy language stating otherwise, the same public policy should prevail irrespective of whether a primary automobile policy or an umbrella policy is involved.

-D-

■ Notwithstanding the well established initial permission rule for primary automobile policies, GAI maintains that the initial permission rule should not be applied to umbrella policies because those policies are different and the primary policy is mandated by law. GAI relies on *Weitz v. Allstate Insurance Co.*, 273 *N.J.Super.* 548, 550, 642 *A.*2d 1040 (App.Div.1994), to support its position.

In *Weitz*, the Appellate Division held that the wife of an umbrella policy holder could not recover under that policy because the plain language of the policy excluded her from coverage. *Id.* at 549–50, 552, 642 *A.*2d 1040. There, the wife sued her husband for injuries that she had suffered in a motor vehicle accident, alleging that her injuries had been caused by his negligence. *Id.* at 549, 642 *A.*2d 1040. The plaintiff also sought a declaratory judgment ordering Allstate to cover her husband under his umbrella policy for any damages awarded for her injuries in excess of his automobile insurance coverage. *Ibid.* GAI contends that the *Weitz* holding represents a principle of strict construction of umbrella policies.

*Weitz* is distinguishable from the present case for two reasons: (1) an express exclusion under the insurance policy was controlling, and (2) the driver's permission to operate the vehicle was not at issue. The umbrella policy provided that " 'this policy will not apply ... to **personal injury** to an **insured.**' " *Id.* at 549, 642 *A.*2d 1040 (alteration in original). The wife was an insured under the policy. *Ibid.* Thus, her claim for coverage was rejected, not

because of the initial permission rule, but because of the policy's express exclusion. *Id.* at 552, 642 *A.*2d 1040. No novel legal principle was implicated.

Similarly, *Stiefel v. Bayly, Martin & Fay of Connecticut, Inc.,* 242 *N.J.Super.* 643, 577 *A.*2d 1303 (App.Div.1990), does not support GAI's position. There, the Appellate Division held that the umbrella policy in question did not provide excess underinsured coverage to the plaintiff. *Id.* at 644, 654, 577 *A.*2d 1303. The issue there was the nature of coverage provided by the various policies rather than whether the driver had permission to drive the vehicle. *Id.* at 644–46, 577 *A.*2d 1303.

We are unable to discern any principled distinction for not applying the permissive user rule to umbrella policies. The fact that primary automobile coverage is mandatory and umbrella policies are optional, changes neither the principles of interpreting insurance policies nor the public policy which undergirds the initial permission rule.

The public policy at the root of the initial permission rule is to ensure the " 'collectibility of damages wrongfully inflicted in the operation of motor vehicles.' " *Matits, supra,* 33 *N.J.* at 495, 166 *A.*2d 345 (quoting *Rikowski, supra,* 117 *N.J.L.* at 410, 189 *A.* 102); *see also Motor Club, supra,* 66 *N.J.* at 292, 330 *A.*2d 360 (promoting provision of "adequate indemnification of innocent automobile accident victims"); *cf. Doto v. Russo,* 140 *N.J.* 544, 553, 659 *A.*2d 1371 (1995) (explaining policy of broadly protecting public from automobile accidents in context of underinsured motorist statute). The same public policy of ensuring collectibility of damages caused to innocent victims who are involved in automobile accidents is advanced by applying the permissive user rule to umbrella policies. The initial permission rule is not designed to protect the liability risks of the insureds because they were not exposed in any of the reported initial permission decisions. Therefore, the absence of any risk exposure is not a valid reason to deny application of the rule to umbrella policies.

█ The fact that neither Timothy nor Barbara gave Tartamosa permission to use the Mustang, as opposed to giving him limited permission that he then exceeded, does not prevent application of the permissive user rule. "Once an owner [of an automobile] voluntarily hands over the keys to his [or her] car, the extent of permission he [or she] actually grants is as irrelevant in the one case as in the other." *Odolecki, supra,* 55 *N.J.* at 550, 264 *A.*2d 38. "In other words, a liability insurance contract is for the benefit of the public as well as for the benefit of the named or additional insured." *Id.* at 549, 264 *A.*2d 38.

█ Unless umbrella policies clearly and unambiguously state that permission to use the covered vehicle can only come from a named insured and that there is no coverage for any other user, a named insured's reasonable expectation may be otherwise. It is well settled that coverage provisions should be construed broadly and liberally, in favor of the insured. *Sandler v. New Jersey Realty Title Ins. Co.,* 36 *N.J.* 471, 479, 178 *A.*2d 1 (1962); *Franklin Mut. Ins. Co. v. Security Indem. Ins. Co.,* 275 *N.J.Super.* 335, 340, 646 *A.*2d 443 (App.Div.), *certif. denied,* 139 *N.J.* 185, 652 *A.*2d 173 (1994); *Sinopoli v. North River Ins. Co.,* 244 *N.J.Super.* 245, 250, 581 *A.*2d 1368 (App.Div.1990), *certif. denied,* 127 *N.J.* 325, 604 *A.*2d 600 (1991). Ambiguities should be resolved in favor of the insured. *Mazzilli v. Accident & Cas. Ins. Co.,* 35 *N.J.* 1, 7, 170 *A.*2d 800 (1961); *Franklin, supra,* 275 *N.J.Super.* at 340, 646 *A.*2d 443. Additionally, insurance policyholders are entitled to " 'the broad measure of protection necessary to fulfill their reasonable expectations.' " *Franklin, supra,* 275 *N.J.Super.* at 340, 646 *A.*2d 443 (quoting *Kievit v. Loyal Protective Life Ins. Co.,* 34 *N.J.* 475, 482, 170 *A.*2d 22 (1961)); *see also Salem Group v. Oliver,* 128 *N.J.* 1, 4, 607 *A.*2d 138 (1992). The insured's reasonable expectations should govern "to the extent the policy's language allows." *Salem Group, supra,* 128 *N.J.* at 4, 607 *A.*2d 138.

If, for example, the Heims had a second child living in a different residence and if Michael were to give that sibling the same permission to drive the Mustang that he gave Tartamosa,

one would reasonably conclude that if that child were involved in an accident under the same circumstances, the named insureds would expect that either of their children would be covered by the umbrella policy. This illustrates a substantial reason why the Heims's reasonable expectation was that the initial permission rule would be applied.

-E-

■ Finally, we reject GAI's contention that the disparity between the Heims's $114 premium for their umbrella policy and their $380 premium for their primary liability coverage demonstrates that they did not reasonably expect that their umbrella policy would cover an accident such as the one that occurred in the present case.

The lower premium charged for the umbrella policy is a reflection of underwriting considerations based on the assumption that claims under that policy will usually arise less frequently than will claims under a primary liability policy because the primary policy will cover most claims. *See* 8C John Alan Appleman & Jean Appleman, *Insurance Law and Practice* § 5071.65, at 107 (1981) (stating that umbrella polices cover "uncommon, but possible, enormous verdicts ... at a small premium").

II

We affirm the judgment of the Appellate Division holding that Tartamosa is a permissive user under the Heims's umbrella policy. The matter is remanded to the Law Division for disposition of the personal injury complaints.

O'HERN, J., dissenting.

The majority creates a paradox in this case. Even though an umbrella policy is anything but an automobile policy, the majority treats it as though it were. The majority adopted the reasoning of the Appellate Division in its unreported decision, "that there is no

difference in the application of the permissive user rule under a primary or excess policy of automobile liability insurance. The rule of *Matits v. Nationwide Mutual Insurance Company*, 33 *N.J.* 488, 166 *A.*2d 345 (1960), and its progeny is equally applicable to an excess policy."

This reasoning is understandable but unsound. To begin with, umbrella policies are a special form of excess coverage. "Umbrella policies serve an important function in the industry. In this day of uncommon, but possible, enormous verdicts, they pick up this exceptional hazard at a small premium. However, because of the misunderstanding of the courts as to the nature of such coverages, they have been held to fall within the definition of automobile liability insurance." *Mass v. U.S. Fidelity & Guar. Co.*, 222 *Conn.* 631, 610 *A.*2d 1185, 1190 (1992) (quoting 8C J. & J. Appleman, *Insurance Law and Practice*, § 5071.65 (1981)).

In *Doto v. Russo*, 140 *N.J.* 544, 659 *A.*2d 1371 (1995), the Court held that if an umbrella carrier held out to a policy holder that there would be underinsured motorist coverage under the policy, that representation would have to be met. In doing so, however, the Court clearly acknowledged that the purpose of umbrella coverage "is fundamentally different from a primary [automobile] liability policy." 140 *N.J.* at 552, 659 *A.*2d 1371. The Court emphasized that

an "umbrella policy," clearly intended as excess insurance to protect against catastrophic judgments and issued as supplementary insurance to existing primary policies themselves sufficient to meet the requirements of the law, is neither an automobile liability nor motor vehicle liability policy within the scope of the uninsured motorist statute, even though one of the primary policies may itself insure automobiles.

[*Ibid.* (citing *Trinity Universal Ins. Co. v. Metzger*, 360 So.2d 960, 962 (Ala. 1978)).]

"[A]ny other interpretation would distort the actual purpose of the umbrella policy." *Id.* at 553, 659 *A.*2d 1371 (quoting *Matarasso v. Continental Cas. Co.*, 82 A.D.2d 861, 440 *N.Y.S.*2d 40, 41 (App.Div.

1981), *aff'd,* 56 *N.Y.*2d 264, 451 *N.Y.S.*2d 703, 436 *N.E.*2d 1305 (1982)).

Umbrella policies provide:

> a needed form of coverage which picks up, above the limits of all other contracts, such as automobile and homeowners coverages, to give the security and peace of mind so necessary today where jury verdicts, or court awards, may be very substantial, to discharge the unexpected, but potentially bankrupting, judgment. The premium is comparatively small, for the size of the risk, so that the company cannot be expected to prorate with other excess coverages; and public policy should not demand that this be done.
>
> [8A Appleman, *supra,* § 4906 at 348.]

That same reasoning should apply to coverage issues. Thus, while "an automobile policy must be construed, if possible, so as not to defeat a claim to indemnity," 13 Appleman, *supra,* § 7483 at 573, that public policy does not extend with equal force to umbrella policies. In *Motor Club Fire & Casualty Co. v. New Jersey Manufacturers Insurance Co.,* 73 *N.J.* 425, 375 *A.*2d 639, *cert. denied,* 434 *U.S.* 923, 98 *S.Ct.* 402, 54 *L.Ed.*2d 281 (1977), Judge Carton, when temporarily assigned, explained that in interpreting automobile insurance policies the Court had in *Matits, supra,* adopted "the broadest and most liberal approach, known as the 'initial permission rule.'" 73 *N.J.* at 432, 375 *A.*2d 639. In interpreting the omnibus clauses of automobile liability insurance policies, they must be read "in light of the settled legislative policy designed to provide financial compensation to those who are wrongfully injured in motor vehicle accidents." *Id.* at 433, 375 *A.*2d 639.[1] That interpretation is plainly justified on the basis of the statutory directives that governed the language of automobile insurance policies. That provision, *N.J.S.A.* 39:6–46(a) (repealed 1979), required that an automobile policy shall "insure the insured named therein and any other person using or responsible for the use of any such motor vehicle with the express or implied consent

---

[1] In his dissent, Justice Clifford described the *Motor Club* opinion as reaching "what surely must be the outer limits of the 'hell or high water doctrine'" of coverage. 73 *N.J.* at 439, 375 *A.*2d 639 (quoting *Small v. Schuncke,* 42 *N.J.* 407, 416, 201 *A.*2d 56 (1964) (Hall, J., concurring)).

of the insured." *Id.* at 431, 375 *A.2d* 639; *see also Selected Risks Ins. Co. v. Zullo,* 48 *N.J.* 362, 225 *A.2d* 570 (1966) (holding automobile liability policies restricting omnibus coverage would be deemed amended to contain omnibus coverage no less broad than what statute required).

The legislative policies that sustain such a broad interpretation of compulsory automobile liability insurance are simply inapplicable in this context. The umbrella policy is designed to protect the policyholder in the event of a rainy day. No rain is falling on this policyholder because there was no agency involved in the use of the vehicle. The case against the policyholder has been dismissed. It may be that a claim can validly be made under this umbrella policy but not on the rationale advanced by the majority.

Justice POLLOCK joins in this opinion.

*For affirmance and remandment*—Chief Justice PORITZ, and Justices HANDLER, GARIBALDI, STEIN and COLEMAN—5.

*For dissenting*—Justices POLLOCK and O'HERN—2.