785 A.2d 963 (2001)
345 N.J. Super. 529
John G. FORTUNATO, Plaintiff(s),
v.
HIGHLANDS INS. GROUP, et al. Defendants(s).
Superior Court of New Jersey, Law Division.
Decided August 9, 2001.
*964 John S. Voynick, Jr., Renda & Voynick, Cedar Grove, for plaintiff.
David T. Pfund, Harwood Lloyd, LLC, for defendant.
HUMPHREYS, J.S.C. (Retired/On Recall).
Plaintiff's wife was injured by a fall on snow and ice on the steps of their premises. She sued the plaintiff for negligence in not removing the snow and ice. The suit was settled for $350,000. The Civil Presiding Judge entered a judgment against the plaintiff in that amount upon a finding that the settlement was fair and reasonable in amount.
The issue in this declaratory judgment action is whether plaintiff is covered for this judgment by a personal umbrella liability policy in which he and his wife are the named insured.
Both parties have moved for summary judgment. The parties agree that there are no material issues of fact and the court may decide the issue as a matter of law. The court has considered the submissions and arguments of counsel. The court holds that the plaintiff's personal umbrella policy provides coverage for this judgment.

I
The plaintiff and her husband had two policies, a homeowners policy and a "personal umbrella" policy.
The homeowners' policy expressly excluded bodily injury to a named insured. The personal umbrella policy did not contain any such exclusion. However, the insurance company maintains that the wife's claim is excluded because of language in the umbrella policy defining the word "injury."
The language is: "Injury means bodily injury or mental harm to others caused by an accident" (emphasis added). The insurance company contends that because the plaintiff's wife is a named insured, she does not fall within the plain meaning of the word "others."

II
Insurance policies are contracts of adhesion between parties who are not equally situated. Meier v. New Jersey Life Ins. Co., 101 N.J. 597, 611, 503 A.2d 862 (1986). The parties to an insurance *965 policy do not have equal bargaining power. Thus, in order to render a fair interpretation of the boundaries of insurance coverage, the courts will enforce "only the restrictions and the terms in an insurance contract that are consistent with the objectively reasonable expectations of the average insured." Ibid., at 612, 503 A.2d 862.
As stated in Kievit v. Loyal Protective Life Ins. Co., 34 N.J. 475, 482-83, 170 A.2d 22(1961):
When members of the public purchase policies of insurance they are entitled to the broad measure of protection necessary to fulfill their reasonable expectations. They should not be subject to technical encumbrances or to hidden pitfalls and their policies should be construed liberally in their favor to the end that coverage is afforded "to the full extent that any fair interpretation will allow."
Consequently, a "basic tenet of insurance law [is] that in interpreting insurance contracts any ambiguities should be construed against the insurer and in favor of the insured." Meier, supra at 612-13, 503 A.2d 862.
As stated in Allen v. Metro. Life Ins. Co., 44 N.J. 294, 305, 208 A.2d 638 (1965):
The company is expert in its field and its varied and complex instruments are prepared by it unilaterally whereas the assured or prospective assured is a layman unversed in insurance provisions and practices. He justifiably places heavy reliance on the knowledge and good faith of the company and its representatives and they, in turn, are under correspondingly heavy responsibilities to him. His reasonable expectations in the transaction may not justly be frustrated and courts have properly molded their governing interpretative principles with that uppermost in mind. Thus we have consistently construed policy terms strictly against the insurer and where several interpretations were permissible, we have chosen the one most favorable to the assured.
See also Bowler v. Fidelity & Casualty Co. of New York, 53 N.J. 313, 326, 250 A.2d 580 (1969) (Courts give the insured the benefit of any construction which can be said fairly to represent the protection extended); Mazzilli v. Accident & Casualty Ins. Co. of Winterthur, Switzerland, 35 N.J. 1, 7-8, 170 A.2d 800 (1961) (In evaluating an insured's claim as to the meaning of language in an insurance policy, courts necessarily consider whether alternative or more precise language could have been used by the insurer's expert draftsman so as to put the matter beyond reasonable question; hence, "doubts as to the existence of coverage must be resolved in favor of the insured."); Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 175, 607 A.2d 1255 (1992) (Because insurance policies are contracts of adhesion, courts must assume a particularly vigilant role in ensuring their conformity to public policy and principles of fairness; if an insured's reasonable expectations contravene the plain meaning of a policy, even its plain meaning can be overcome); Progressive Casualty Ins. Co. v. Hurley, 166 N.J. 260, 277-78, 765 A.2d 195 (2001) (Language in a corporate automobile insurance policy regarding coverage of "family member" was so confusing and ambiguous that average policy holder could not make out boundaries of coverage; hence sole stockholder of corporation was covered under the policy); Longobardi v. Chubb Ins. Co. of New Jersey, 121 N.J. 530, 537, 582 A.2d 1257 (1990) (If there is no genuine ambiguity, courts should not engage in a strained construction to support the imposition of liability or write for the insured a better policy than the one purchased); Zacarias v. Allstate Ins. Co., 168 N.J. 590, 775 A.2d *966 1262 (2001)(A plain and unambiguous clause excluding a family member is enforceable).

III
The present case involves the construction of a personal umbrella policy. Such polices are especially designed to provide broad and expansive coverage to the insured. Personal umbrella policies are described in John Appleman's Insurance Law and Practice as follows:
One very important type of coverage in these days of potentially high verdicts is that provided by so-called umbrella or catastrophe policies. Briefly, these are policies of insurance sold at comparatively modest cost to pick up where primary coverages end, in order to provide an extended protection up to a million, five million, ten million or more. It gives a financial security, as well as peace of mind, to the individual purchasing such coverage who is hopeful that he will never be involved in any substantial claim or lawsuit, but, if he is, is desirous of not losing the security it may have taken a lifetime to acquire. It should be noted that these polices often provide a primary coverage in areas which might not be included in the basic coverage, since it is the intent of the company to afford a comprehensive protection in order that such peace of mind may truly be enjoyed.

[8A John A. Appleman, et al., Insurance Law and Practice, § 4909.85, at 452-53 (1981)(emphasis added) ].
The broad scope of umbrella policies has been recognized in New Jersey. In Bryan Const. Co. Ins. v. Employers' Surplus Lines Ins. Co., 60 N.J. 375, 290 A.2d 138 (1972), Bryan was constructing public facilities. The county sued Bryan for allegedly defective and improper construction. Bryan's primary insurance policies excluded such claims and the Court so held. However, Bryan also had an umbrella policy.
The Court said that the umbrella policy by its "very nomenclature suggested a purpose to protect against gaps in the underlying policies and indicated more than mere excess coverage." Ibid. at 377, 290 A.2d 138. An insured purchasing such a policy can reasonably expect that the policy would provide coverage "where the underlying policies failed to do so." Id. The Court, therefore, construed the umbrella policy to cover the county's claims.
In the present case, the insurer sets forth in the umbrella policy in clear language an intention to afford the insured broader coverage than the insureds' other policies. The umbrella policy provides:
COVERAGES
This policy provides extra liability insurance over and above what is covered by your basic policies. Protection is also provided against claims and legal actions covered by this policy but not covered under your basic policies. Only injury and damage which occur accidentally are covered. This coverage is world wide. (emphasis added).
Except for the word "others" in the definition section, nothing in the entire policy even hints that this world-wide, extra coverage, over and above the insured's basic policies would not apply to claims by a named insured against the other named insured. Only the most punctilious of readers would comprehend that this expansive language has been completely nullified when the claimant is also a named insured.
Clearly the policy is ambiguous and should be construed against the insurer. See Martusus v. Tartamosa, 150 N.J. 148, 159, 696 A.2d 1 (1997) ("Unless umbrella policies clearly and unambiguously state *967 that permission to use the covered vehicle can only come from a named insured, and that there is no coverage for any other user, a named insured's reasonable expectation may be otherwise").
The ambiguity of the umbrella policy here is also shown by the conduct of the insurer. After this accident, the insurer issued a new umbrella policy to the plaintiff and his wife. The new policy contains a specific and clearly worded exclusion of claims between the named insureds.
The new policy was accompanied by a notice in which the company discussed the exclusion as follows: Exclusion 15, regarding Personal Injury or Property Damages to persons who are insured under the policy is added. Clarifies the exclusion of liability for this type of action." (The word "clarifies" is in bold print and underlined in the policy).
If an insurance company changes language in a policy in order to clarify language in the prior policy, this implies that the earlier policy needed clarification. Language which needs clarification is ambiguous and must be construed against the insurer.
Added support for plaintiff's position is that the companies which issued the homeowners policy and the umbrella policy are inter-related to some extent. Under these circumstances, the issuance of one policy with a specific exclusion and another policy without that specific exclusion carries with it an implication that the omission was intentional. See Union Ins. Co. v. Land & Sky, Inc., 247 Neb. 696, 529 N.W.2d 773, 777 (1995) (The specific exclusion of patent infringement in one policy but not in a second policy implies that patent infringement is not excluded in the second policy). See also to similar effect, Board of Regents v. Royal Ins. Co. of America, 517 N.W.2d 888 (Minn.1994).
Further, a reasonable expectation for insureds protected by an umbrella policy is that the policy in the absence of an exclusionary clause will afford them protection from claims arising from household accidents even if the claimant is also a named insured. This conclusion is fortified by the Supreme Court's language in Merenoff v. Merenoff, 76 N.J. 535, 388 A.2d 951 (1978), the landmark case in which the Court abolished the doctrine of interspousal immunity. In Merenoff and in a companion case, wives sued husbands for personal injuries resulting from household accidents negligently caused by their husbands. In each case, the husband and wife were the insureds under home owners policies. In the course of its opinion, the Supreme Court said: "In the cases now before us, and we assume in a great many cases involving household accidents, liability insurance is available." Id. at 553, 388 A.2d 951. (emphasis added).
This court likewise assumes that in an "great many cases" involving household accidents, liability insurance is available to protect an injured spouse from the negligence of the other spouse. If the insurance company wishes to withdraw that protection, then it should by clear language in the policy state that such insurance protection is not being provided. See Weitz v. Allstate Ins. Co., 273 N.J.Super. 548, 551, 642 A.2d 1040 (App.Div.1994) (The court upheld an exclusionary clause in an umbrella policy which specifically, clearly, and in bold print excluded personal injury claims by members of the insured's household).
If the insurance company does not so clearly and expressly provide, then for an "great many" insureds, their liability insurance protection will be a chimera. Marriages and relationships, especially in today's world, often do not endure. If the relationship later dissolves, the peace and *968 security promised to a couple through the purchase of an umbrella insurance policy will be illusory. See dissenting opinion of Justice O'Hern in Martusus, supra at 162-163, 696 A.2d 1.
To bring home this hypothetical, this court does not know whether the plaintiff and his wife are presently living in matrimonial harmony. What the court does know is that the plaintiff's wife holds a $350,000 judgment against him and a court has found the judgment to be fair and reasonable. The court also knows that the plaintiff's insurance company based on one word in his umbrella policy will not protect him against this $350,000 judgment, notwithstanding the insurance company's fiduciary duty to him, see Pickett v. Lloyd's, 131 N.J. 457, 467, 621 A.2d 445 (1993), and the absence in his umbrella policy of any provision excluding this claim. The potential for a serious injustice is obviously present.
In sum, the umbrella policy here is ambiguous and should be construed in favor of the insured and in accord with his reasonable expectation that he had insurance protection for this claim. Summary judgment is granted to plaintiff.